NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—April, 1882 ; *again*, March, 1884.

DYER V. ERVING.*

*In the matter of the application for probate of papers
propounded as part of the will of* EDWARD D. E.
GREENE, *deceased*

After decedent's will, which directed the distribution of sundry legacies
to persons named in "three memorandums left with this will for
the (executors') guidance," had been proved, a petition was present-
ed asking that those memoranda be admitted to probate, as consti-
tuting a necessary and important part of the will. More than one
hundred legatees were designated in those memoranda. A question
having arisen as to who were entitled to be cited on the supplement-
ary application for probate,—

*Held*, that this question should be treated precisely as if it had arisen
when the will already proved was offered, and that the beneficiaries
designated in the memoranda were not entitled to citation, under the
provisions of Code Civ. Pro., § 2615

*It seems*, that the persons so designated might intervene, under Code Civ.
Pro., § 2617, and make themselves parties to the proceedings for pro-
bate of the memoranda.

Walsh v. Ryan, 1 *Bradf.*, 433—followed.

---

Words of reference in a will are not effectual to incorporate therein the
contents of an extraneous paper not physically connected there-
with, unless it can be clearly shown that such paper was in existence
at the time of the execution of the will.

An extraneous paper, produced as and for a paper referred to in a will,
and shown to have been in existence at the time of the execution of
the latter, may be adjudged to form, and be admitted to probate as
a part of the will, where, and only where, by satisfactory and conclu-
sive evidence it has been proved to be the very same paper which
the testator, by his words of reference, designed to indicate.

---

* See Matter of Webb, *post*, p. 459 ; and an article on the "Incorpora-
tion of Extrinsic Documents in Wills" by EUGENE D. HAWKINS, Esq , in
29 Alb. L. J., 484.

An application for a decree admitting to probate certain memoranda produced and claimed to constitute part of a will already admitted, because referred to therein by means of certain alterations apparent on its face, having been determined adversely on the ground that the memoranda were completed after the will was executed, and no evidence being at hand to show that the alterations in the will were effected before its execution,—

*Held*, in the same proceedings, that the contrary presumption prevailed, and that the record of the will should be amended so as to make that instrument read as it did before the changes took place.

The doctrine of Wetmore v. Carryl (5 Redf., 544), as to the presumption in respect to the time when unattested alterations apparent upon the face of a will were made—followed.

After one has signed and published an instrument, and caused it to be attested, as and for his last will, though he may revoke it by destruction, or annul or modify it by another writing executed with due formalities, he cannot otherwise vary its terms, by additions, interlineations, obliterations or erasures on its face, or by the after-preparation of unattested supplementary papers, or by the alteration of any such papers already in existence, and engrafted by proper reference upon the will.

*It seems*, that but slight evidence of testamentary connection between documents, and a last will referring to "memorandums left with this will," is afforded by the mere fact of their being found in the same package or inclosure after testator's death.

PETITION by Harriet Erving, one of decedent's next of kin, for the admission to probate of memoranda claimed to constitute part of decedent's will. The executors, Henry L. Dyer and Henry A. Oakley, appeared and by their answer prayed that such action might be taken as would protect them in the execution of their trust. Merced D. M. Greene and Emelia J. B. Greene, two of the next of kin, united in asking for the relief prayed for in the petition. The facts appear sufficiently in the opinion.

JAMES H. FAY, *for petitioner.*

SCUDDER & CARTER, *for executors.*

HENRY PARSONS, *for Merced D. M. and Emelia J. B. Greene.*
    VOL. II.—11.

THE SURROGATE.—The will of the testator has been admitted to probate in this court. By its first clause, his entire estate is given to two persons, in trust for the purposes thereinafter named. By its second clause, those trustees are directed to pay to his sister Harriet Erving, during her life, the net interest and income of his estate, excepting "those items named ·in a memorandum accompanying and referred to in clause fourth of this will." By the last named clause, the testator directs that, after the death of his sister, his trustees and executors shall distribute certain legacies, to sundry institutions and persons named in "three memorandums left with this will for their guidance."

No one of the memoranda thus referred to was propounded with the will.

On the 17th of January last, Harriet Erving filed a petition asserting that these memoranda formed a necessary and important part of the testator's will, and as such ought to be admitted to probate. Citation was thereupon issued to the executors and to the heirs at law, next of kin and residuary legatees of the testator, directing them to appear on the 20th of March last, and show cause why these memoranda should not be proved as part of the will. Upon the return of that citation it was stated, on behalf of the executors, and was admitted to be true, that there were named as legatees by these memoranda very many persons who had not been notified to appear.

It was suggested that, before the question was considered whether the memoranda should be allowed probate, all such persons ought to be cited. There are, it appears, about sixty individuals, among whom nearly

fifty thousand dollars are distributed in general legacies, and there are more than that number to whom specific legacies are bequeathed.

The question here raised should be treated precisely as if it had arisen when the will was offered for probate. There is manifestly no reason why any person or persons should now be cited, whom it would not have been necessary to cite, if the executors had propounded these papers with the will itself. It is provided by § 2614 of the Code that a person designated in a will as legatee may present a petition for its probate, and praying that the persons specified in the next section may be cited to attend. Upon the presentation of such petition it is made the duty of the Surrogate to issue a citation accordingly. Section 2615 declares what persons must be cited, and the only persons named, with whom we have any concern in the present case, are the heirs at law and the next of kin.

Section 2617 provides that any person who is named as a legatee, although he has not been cited, may appear, and at his election support or oppose the application for probate. It adds that a person so appearing becomes a party to the proceeding. Neither this section nor § 2615 seems to be consistent with the claim that the citation of other legatees is ever necessary to give the Surrogate's court jurisdiction of such a proceeding as the present.

Mr. Throop appends a note to this section in his edition of the Code. "Under the former statute," he says, " as the citation must have been served on those who would succeed to the estate if there was no will, they were by implication permitted to oppose the pro-

bate, but no provision was made for the intervention of legatees or devisees, for they were supposed to be, and doubtless usually were, sufficiently represented by the executor."

I find but one reported case deciding the precise question here raised, but there have been many decisions in the courts of this State upon a matter closely analogous.

It was held in the case of Brown v. Ricketts (*3 Johns. Ch.; 553*) that, where bequests were made by a will to several persons, one of them alone might file a bill against the executor for the payment of his legacy, but that, where a bill was for the residue, all the residuary legatees must be parties. To the same effect are Davoue v. Fanning (*4 Johns. Ch., 199*); Fish v. Howland (*1 Paige, 20*); Kettle v. Crary (*1 Paige, 417*); Hallett v. Hallett (*2 Paige, 15*); Cromer v Pinckney (*3 Barb. Ch., 466*); McKenzie v. L'Amoureux (*11 Barb., 516*); Towner v. Tooley (*38 Barb., 598*). It was decided by Surrogate BRADFORD, in Walsh v. Ryan (*1 Bradf., 433*), that legatees might intervene on probate if they asked leave to do so, but that it was not necessary that they should be cited to attend. No authorities maintaining an opposite view have come under my observation. I hold, therefore, that the proceeding for admitting to probate these memoranda has been properly instituted.

In March, 1884, the main question came up for determination on motion for confirmation of the referee's report, the following opinion being delivered:

THE SURROGATE.—Soon after the death of this decedent, in the year 1879, a paper propounded as his will

was admitted to probate in the Surrogate's court of this county. The fourth clause of that instrument, as it stands recorded, directs the testator's executors to distribute "certain bequests in money and personal effects to sundry institutions and persons named in three memorandums left with this will for their guidance." When the will was propounded, no papers were produced before the Surrogate, as and for the "memorandums" thus referred to. The instrument was accorded probate without regard to such memoranda, and without regard also to the appearance upon its face of several important alterations, whose significance and effect will be hereafter considered.

Three papers which are claimed to be the "memorandums" designated in the will are now before the Surrogate. It is alleged in the petition of Harriet Erving, a half sister of testator and one of his legatees and next of kin, that these papers are in the handwriting of the testator, and that they were prepared by him, as she is informed and believes, at or before the time when the will itself was executed, and with an intention on his part that they should be treated by his executors as forming a part of that instrument. She asks that they be admitted to probate accordingly.

Upon the filing of this petition, citations were duly issued to all persons entitled to be made parties to the proceeding. Emelia Greene and Merced Greene, nieces of the testator, and constituting with the petitioner herself his only next of kin, appeared by counsel, and united in the prayer of her application.

The testator's executors thereupon filed an answer, wherein they alleged their lack of knowledge and of

information warranting a belief as to whether the memoranda referred to by the petitioner were made by the testator at or before the time when he executed his will, and wherein they alleged also that, upon the face of that will, there were apparent certain alterations and obliterations, some of which occurred in the very clauses that made reference to the memoranda. They prayed that, in view of these facts, the probate should be opened and proofs taken for ascertaining whether such alterations and obliterations were made before or after the execution of the will, and whether, at the time of such execution, the memoranda in question were or were not all or any of them in existence, and were or were not all or any of them incorporated by the testator into his will, and entitled to be admitted to probate accordingly.

For the taking of testimony upon the issues thus raised, a reference was ordered. The evidence submitted to the referee and his report thereon are now before me.

In considering whether these memoranda should be adjudged to form a part of the will, I shall start with the assumption that that instrument has been correctly recorded, and that all the changes apparent upon its face were made before its execution.

Whether or not such assumption be correct, and how far, if at all, a conclusion as to the testamentary efficacy or inefficacy of the memoranda may require modification in case it shall be determined that the record of the will itself must be changed, are matters which will be discussed hereafter.

But, ignoring for the present the fact that there is

any dispute as to the true reading of that paper, its provisions are discovered to be as follows :

The testator gives his whole estate in trust to his executors.

He instructs them to pay to his sister Harriet, during her life, the net interest and income thereof, " excepting those items of personal estate named in *a memorandum* accompanying and referred to in clause fourth."

He directs that, upon the death of his sister, legacies of ten thousand dollars shall be paid to each of his nieces, Merced and Emelia, and that, in the event that neither of those nieces shall survive his sister, such legacies shall be " disposed of according to *the memorandum* accompanying and referred to in clause fourth of this will."

Clause fourth is as follows :

" I direct that my executors and trustees pay over and distribute, . . . after the death of my sister, certain bequests in money and personal effects to sundry institutions and persons named in *three memorandums* left with this will for their guidance."

The fifth clause is unimportant for the purposes of the present inquiry.

The sixth clause is in these words :

" I direct my executors to pay over to the following named persons (relatives) . . . two thirds part of the residue of all my estate, both real and personal, excepting those items already bequeathed, referred to in clause fourth of this will, and after making the distribution as directed in *the memorandums* referred to in said clause."

Then follow the names of eleven persons, all of whom

have been cited to attend this proceeding, but none of whom have appeared except as they have been represented by the executor.

By the seventh clause of the will, the testator disposes of the remaining third of his residuary estate.

Before specifying the contents of the papers now propounded for probate, or reviewing the evidence as to the circumstances under which they were found, and as to the time when they were probably prepared, it may be well to inquire within what limitations an unattested paper not physically connected with a will can be judicially determined to be incorporated into such an instrument, so as to form a part of it and to be entitled to probate accordingly.

Upon a review of every reported case bearing upon this subject, which by diligent search I have been able to discover, I hold :

First. That words of reference in a will will never suffice to incorporate the contents of an extraneous paper, unless it can be clearly shown that, *at the time such will was executed, such paper was actually in existence.*

Second. That an extraneous paper produced as and for a paper so referred to in a will, and shown to have been in existence when such will was executed, may be adjudged to form part of such will and be admitted to probate as such, under these circumstances, and no other; to wit, when by satisfactory and conclusive evidence *it has been proved to be the self-same paper which the testator by his words of reference designed to indicate.*

Among the decisions which fully support these pro-

positions are the following: 1793, Habergham v. Vincent (*2 Ves., 228*); 1801, Smart v. Prujean (*6 Ves., 560*); 1842, In the Goods of Countess of Durham (*1 N. of C., 365*); 1842, In the Goods of Dickins (*1 N. of C., 398*); 1843, Jorden v. Jorden (*2 N. of C., 388*); 1844, Sheldon v. Sheldon (*3 N. of C., 250*); 1844, Croker v. Marquis of Hertford (*3 N. of C., 150*); 1845, In the Goods of Smartt (*4 N. of C., 38*); 1845, In the Goods of Bacon (*3 N. of C., 644*); 1845, Chambers v. McDaniel (*6 Ired. L., 226*); 1851, Harvy v. Chouteau (*14 Mo., 587*); 1851, Johnson v. Clarkson (*3 Rich. Eq., 305*); 1858, Allen v. Maddock (*11 Moore P. C., 427*); 1859, Bailey v. Bailey (*7 Jones, Law, 44*); 1862, Van Straubenzee v. Monck (*3 Sw. & T. 6*); 1868, In the Goods of Pascall (*L. R., P. & D., 606*); 1876, Singleton v. Tomlinson (*House of Lords, L. R., 3 App. Cas., 404*); 1878, Ludlam v. Otis (*15 Hun, 410*); 1879, Brown v. Clark (*77 N. Y., 369*); 1881, Newton v. Seaman's Friend Society (*130 Mass., 91*).

All these cases uphold the authority of a testator to give testamentary efficacy to extraneous papers by words of reference in his will, but they carefully restrain that authority within the limits above indicated.

To remove this restraint, or in the least to relax it, would be mischievous in the extreme. By its recent decision in Matter of O'Neil (*91 N. Y., 523*), the Court of Appeals of this State gives distinct intimation of its unwillingness to enlarge, if not indeed of its disposition to narrow, the scope and effect of referential words in testamentary papers.

Of course one is at liberty, when he executes his will, to disclose its contents to the subscribing witnesses, or to withhold from them any information whatever as to

its provisions, save the bare fact that it is his will; but when once he has signed and published it and caused it to be attested, though he may absolutely revoke it by destruction, or may annul or modify it by another writing executed with formalities such as attended its own execution, he cannot otherwise, by one jot or tittle, vary its terms, either by additions, interlineations, obliterations, erasures or other changes upon its its face, or by the after - preparation of unattested papers, designed to supplement its provisions, or by the alteration of any such papers already in existence and engrafted by proper reference upon the will itself.

Now, for the application of these rules of law to the facts of the case at bar.

How is it established that the memoranda here offered for probate were in being when the will was signed, and are the identical papers referred to in that instrument?

The will gives no description of the memoranda to which it refers. If, in place of the papers produced, three others should be offered, containing the names of another set of beneficiaries, to the exclusion of all who are here named, and ordering dispositions of property quite unlike those at present under consideration, such papers would answer, no less effectually than the ones now before me, every requirement of the will.

That will, as it stands recorded, does not even provide means for identifying the memoranda of which it makes mention, by distinct specification of the place where they could be found after its maker's decease.

Such a method of identification, while by no means conclusive of itself, is one to which resort is frequently

had, and one to which this testator himself resorted in the fourth clause of his will as originally written. He there referred to a " sealed envelope " wherein the will itself would be found, together with " a memorandum " for the guidance of the executors.

This provision the testator at some time during his life chose to do away with, substituting in its stead words which simply characterize the memoranda as " *memorandums left with this will.*"

Whether this change was made before or after the execution of that instrument, and whether before or after the preparation of the memoranda here produced for probate, it is clear that little proof of the testamentary connection of the two documents would have been afforded by the mere fact of their being found in the same package or enclosure after the death of the testator.

But even such slight and unsatisfactory proof as that is here wanting. The testimony tends to show, but does not fully establish, that the will and memoranda were found in the same trunk, and perhaps in the same envelope, and that is all.

The testator died in June, 1879, more than three years after those memoranda must, upon the theory of the petitioner, have come into existence.

His niece Merced testifies that, at the time of his death, her aunt, her sister and herself were members of his household ; that, soon after he died, Mr. Dyer, one of his executors, in the presence of her sister and herself, took a sealed envelope from a trunk in the room which her uncle had been occupying; that he carried away that envelope without opening it, and that she

learned nothing as to its contents, but inferred from an indorsement upon it that it contained her uncle's will.

The niece Emelia states that she was present when the trunk was opened, and remembers when the envelope which held the will was discovered. According to her recollection, this envelope was at once opened by Mr. Dyer, and was found to contain two documents, which, she thinks, must have been the will and the memoranda.

It is evident, however, that that belief is not solely based upon her observations made at the time of the discovery, but that it is an inference drawn partly from those observations, and partly from certain incidents that happened subsequently. She says that neither the will nor the memoranda were read in her hearing; that she knew one of them was the will from the indorsement upon it, but did not know whether there was any indorsement upon the other, and did not examine its contents.

Mr. Dyer's memory as to what happened on the occasion specified by the testator's nieces is very indistinct. He thinks that he went to the trunk and found the envelope, and that it contained the will and the memoranda, but he is far from confident that such was the case. He knows, however, that he somehow came into possession of both those papers, and that he delivered them to Mr. Bowman, who in the lifetime of the testator had acted as his legal adviser.

Mr. Bowman states that he had several conversations with the decedent as to the possibility of making testamentary bequests effectual, by referring in a will to unattested memoranda containing instructions to exec-

utors.   He says that the deceased came to him "about thirty times with long hypothetical questions as to the form in which he should put this and that," but that he, the witness, never saw either the will or the memoranda.   He thinks, but is not positive, that all his interviews with the testator were prior to May, 1876, the date of the will.

This is a fair abstract of the testimony before the referee.   It gives little assistance to the solution of the questions when the memoranda were made, and whether they have any testamentary value.   They bear no date, and contain no internal evidence that they were in fact written, or even that they pretend to have been written, before the execution of the will.   For aught that appears upon their face, the testator may not, until years after that period, have completed them, or indeed have entered upon their preparation.   They are not shown to have been seen during his lifetime by anybody but himself.   It does not appear that he ever stated or intimated to any person whomsoever that such memoranda as were contemplated by the terms of his will had been actually reduced to writing.   Indeed, so far as the evidence discloses, he at no time revealed the contents of the will itself, or the fact that it contained a reference to any other paper or papers then existing or thereafter to be brought into existence.

The absence of affirmative proof as to the date of the origin of these memoranda is not the only circumstance which makes against the claim that they were in being when the will was executed.   I have already said that they contain no internal evidence in support of that claim.   They contain, on the contrary, not a little in-

ternal evidence against it. They consist of three full sheets, or twelve pages, of legal cap paper, united at the top by metallic fastenings. On the first, fifth and ninth pages (that is, at the beginning of each of the three sheets), there appear captions severally indicating, in words which will presently be quoted, the nature of the contents which follow. These papers are, from first to last, in the handwriting of the testator. In the main, and with the exceptions hereafter noted, they seem to have been written at the same time, or perhaps it is more accurate to say that they give no indications of having been written at different times. In the main, too, they present the marks of great care in their preparation, both as regards the neatness of their chirography and the orderly arrangement of their somewhat elaborate contents.

None of these memoranda, which are respectively numbered No. 1, No. 2, and No. 3, fills up the entire sheet upon which it appears. The first ends near the top of page three, and page four is vacant. The second is all contained on pages five and six, while pages seven and eight are blank. The third extends from page nine to the bottom of page eleven, page twelve serving the purpose of a cover and bearing the indorsement "Memoranda referred to in the will of E. D. E. Greene."

Upon no one of these three connected sheets is there anything to indicate that, with the last item which now appears upon it, its foot or end has been reached. As there are no words of self limitation, the testator had the fullest opportunity therefore, if he chose to exercise it, of indefinitely adding both to the list of his gifts and to the list of his beneficiaries.

The caption of No. 1 is as follows :

"Memorandum of bequests to sundry institutions, etc. This memorandum is for the guidance of my executors and trustees, and is referred to in clause fourth of my will, dated May nineteenth, eighteen hundred and seventy-six.     EDW. D. E. GREENE."

No. 2 has this heading :

"Memorandum of certain bequests in money to be paid over by my executors and trustees. This memorandum is referred to in clause fourth of my will, which is dated May nineteenth, eighteen hundred and seventy-six.     EDW. D. E. GREENE."

The third caption is in these words :

"Memorandum for the distribution of certain of my personal effects as referred to in clause fourth of my will accompanying this, dated May nineteenth, eighteen hundred and seventy-six. I desire that this, as well as the other memorandums, should not be recorded, but kept for reference by my trustees in the execution of my trusts.     EDW. D. E. GREENE."

I have said that the contents of these papers may very likely, with certain exceptions, have been written out at the same time. Those exceptions, however, are numerous and significant, and thoroughly convince me that the document as a whole has been brought into its present condition by a long series of alterations and amendments upon its face. At whatever period that portion which was first written came into being, it is clear that the testator had not then fully and definitely determined who should be the recipients of the bounty, whose distribution was to be governed by the ·memor-

anda, or what should be the nature and extent of the various legacies.

This fact thrusts itself in many ways upon the attention. In the memorandum marked number two, which, like the rest, is upon ruled paper, there appear in regular order upon alternate lines the names of the several beneficiaries. On the intervening lines are specifications of the amounts of the several bequests. These names and amounts. are for the most part homogeneous, as regards the character of the writing, the kind of ink used, etc. But there are notable exceptions. For example, the names of Mrs. Mary Bowman and Mr. Samuel A. Holmes are written in ink, and there is nothing to suggest the notion that they were put upon the paper at any other time than when the caption was written. But the words "five hundred dollars," which in each instance follow the name, are written in lead pencil.

These indications that the document was not born in its present shape, but that it has grown into it, are still more conspicuous in "No. 3."

In the neat handwriting and according to the systematic arrangement, which have already been commented upon, there appear eleven subdivisions, each commencing with the word "To." "To my sister Harriet Erving," says the first, "the portrait of myself," etc. Then comes the word "To" again, as if by way of introduction to another bequest; but between that word and the next item "To my niece Mercedes," there is a vacant space of about three quarters of an inch. This is hardly explicable upon any other theory than this: that, when the testator wrote the word "To" and left

it in solitude, he had a purpose more or less definite, and which he never fulfilled, of inserting at some future time the name of some person, and the description of some legacy in that person's behalf.

The third subdivision reads as follows: "To my niece Mercedes portraits in oil of her father and mother painted by me, photographs of pictures by Cabanel called Aglae and Poete Florentine." The words just quoted are in ink. Then follows in pencil: "Picture in oil, size about 14x10, view of house in Pto. Cabello where her mother was born."

The fourth subdivision concerns his niece Emelia. It begins, in ink, "To my niece Emelia." The description of the legacy is written in lead pencil.

The next subdivision, which is altogether in ink, reads thus: "To the following named persons, a sketch or study in oil or water colors or in pencil." Then comes a list containing fifty-six names. I think that this entire subdivision was probably written at one time. But between this and the one next succeeding is a vacant space large enough to permit the insertion of several names. One of two things is pretty clearly indicated by this circumstance—either that it was the settled purpose of the testator thereafter to enlarge the number of this class of his legatees, or that he thought it well to leave room for such enlargement in case he might thereafter decide to effect it.

The next clause is, perhaps, even more significant than any of the others. It contains these words, and these only: "To Mrs. Caroline L. Ashe."

When the testator wrote that name, it was evidently his intention to make Mrs. Ashe one of his beneficiaries,

but he had not decided what to give her. For the subsequent accomplishment of his purpose, he left about an inch of blank space between her name and the one which immediately succeeds it. But that space he never filled up with the description of a legacy, nor, on the other hand, did he ever indicate the abandonment of his original design by obliterating the name of Mrs. Ashe.

Five other persons are subsequently mentioned as legatees. Of these, two are named as executors in the will, and the other is an attorney with whom the decedent advised as to its preparation. Against each of these names is set a description of a painting or engraving. These descriptions are all written in pencil, and there are palpable indications that, in some instances at least, their place was once occupied by other pencillings which have been imperfectly obliterated.

Having now specified all the most striking features of the memoranda, I proceed to point out some of the characteristics of the will itself. It is altogether in the testator's handwriting, and, as has been stated already, shows upon its face several alterations which are marginally authenticated by the initials of his name. These alterations were in every instance effected by the use of ink differing in color from that employed in the portions of the instrument first reduced to writing, and easily distinguishable therefrom. The first alteration appears in the fourth clause. As originally written, that clause directed the distribution of " certain bequests in money and personal effects to sundry institutions and persons named in *a memorandum* left with this will for their guidance in a sealed envelope and ad-

dressed to my executors." The word "a" before
" memorandum" has been erased. Below the spot
it once occupied is a caret, and above it are the word
"three," and the figure " 3," in the testator's hand-
writing. The letter "s" has been added to the word
" memorandum," and the clause "in a sealed envelope
and addressed to my executors" has been obliterated,
apparently by the use of the same ink as that by which
the other changes were effected.

The sixth clause originally provided that the execu-
tor should pay to certain specified persons two thirds of
the residuary estate, " excepting those items already
bequeathed, referred to in clause fourth of this will,
and after making the distributions as directed in said
clause." As the will now appears, there is a caret
after the word " directed" pointing to the inserted
words "in the memorandum," and through the word
" and," immediately preceding the word "referred,"
the testator has drawn his pen.

Now, these facts tend very strongly to show, in the
absence of evidence to the contrary, that the will was
altered in the particulars above mentioned, so as to be
more consonant with its maker's changed purposes re-
garding the form of the document which he wished to
incorporate into it by words of reference. It is evident
that, at some time when the testator had under consid-
eration the final disposition of his estate, it was in his
mind to eke out the provisions of the will proper by
resort to one memorandum and one only, and that he
subsequently decided to divide the contents of that
one into three distinct parts for the more methodical

and, therefore, more convenient classification of his numerous bequests.

For example, by the first of the memoranda here produced, which is the only one relating in any way to public institutions, he gives $5,000 to the National Academy of Design, $5,000 to the Artists' Fund Society, and, in a certain specified contingency, $1,000 each to three other institutions.

Memorandum No. 2 is devoted solely to pecuniary legacies, and directs the distribution of about $10,000 among fifty individuals.

The third memorandum contains the names of over sixty persons, and only undertakes to bequeath paintings, engravings and other objects of art.

The labors of the testator, in devising the just, kindly and conscientious division of his estate which he was endeavoring to make, were no doubt lightened by the substitution of these three categories of legacies for the original plan which included them all in a single class. But when did he make this substitution? Was it before or after the execution of the will?

Here is a circumstance which seems to me to be of great assistance in answering this question. Far the greater part of the contents of these memoranda bears the marks, as has been stated already, of great care in the preparation, and of having been written at one time. Such is the case with the captions, each of which describes the paper which follows as one referred to "in clause fourth of my will, dated May nineteenth, eighteen hundred and seventy-six." By turning to the *testimonium* clause of the will, it will be found that the date—"this nineteenth day of May"—was

evidently not inserted at the time when the other parts of that instrument were written by the testator. Those words were unquestionably fashioned with different ink and apparently with a different pen.

In the nature of things, the insertion of the date in a testamentary paper is generally deferred until the very hour of its execution, because of doubt as to when that hour will come.    That uncertainty affords the most reasonable explanation in the present case for the failure of the testator to date his will at the time he wrote it.    But is it not in the highest degree improbable that, while he refrained at first from inserting in the will the date of its execution, he should, nevertheless, have prepared beforehand elaborate memoranda, bearing upon their face an explicit declaration that they related to a will "*dated May nineteenth, eighteen hundred and seventy-six*?"    It is much more reasonable to infer from all the circumstances that those memoranda, even as they were first written, and before they had been subjected to any alterations, were written after the will had been executed, and when, therefore, its date had been definitely ascertained.

Their appearance as a whole is, to my mind, susceptible of but one explanation.    At the date of the will, the testamentary purposes of its maker had not fully and definitely and finally shaped themselves in his own mind.    But he believed that, by duly executing such an instrument, and by referring therein to other papers as containing directions to his executors, he could order the distribution of his store of paintings and engravings, and of certain pecuniary legacies, according to such scheme as he might afterwards, and upon more

mature deliberation, devise ;—a scheme which would need to be known to his executors alone and could escape the publicity of record in the Surrogate's court. In other words, he believed, and in my judgment he acted on his belief, that, by his reference to memoranda in the fourth clause of his will, he gained the privilege of creating memoranda at his pleasure, and at his pleasure of altering them, and thus of making legally effectual such purposes as at the time of his death might find expression in any holographic papers which purported upon their face to be the memoranda referred to by his will.

I must, therefore, deny the petitioner's application. The question thus decided has been hitherto discussed upon the assumption that the will, as altered and recorded, is the true will of the testator.

If, on the other hand, it shall appear that the record must be changed so as to conform to the language of that instrument before it suffered alteration, then *a fortiori*, must it be held that the memoranda are disentitled to probate.

There only remains to be considered the question whether the record of the will should be suffered to remain unchanged, or should be made to conform to the terms of that instrument before it was in any wise altered by the testator.

I adhere to the legal proposition which I declared in the case of Wetmore v. Carryl (*5 Redf.*, *544*), that, in the absence of evidence to the contrary, unattested alterations upon the face of a will must be presumed to have been made after its execution.

To overcome the force of that presumption in the case

at bar, there is no satisfactory evidence. It has not appeared that these alterations were called to the attention of the subscribing witnesses, nor has it otherwise been shown that they were effected before execution. Indeed, so far as the proofs disclose, every one of them may have been effected long afterwards.

I must, accordingly, direct that the record of the will be amended so that it may read as it did before the changes that appear upon its face.

It is with great reluctance that I have formed these conclusions. I have little doubt that the real wishes of the decedent at the time of his death find substantial expression in the will as it stands recorded, supplemented by the memoranda that are here the subject of dispute, and that by the decree to be entered upon this decision, the bulk of this estate will be diverted from the hands of those whom the testator by painstaking effort sought to make his beneficiaries. But any other decision than that which I have announced could only be reached by utterly setting at naught the statutes which prescribe the formalities that must attend the execution of testamentary instruments, and the modes whereby such instruments once executed can be revoked.