CROMER *vs.* PINCKNEY and others, executors, &c.

As a general rule, a legatee may sue the executor, for his own particular legacy, without making the residuary legatees, or any other legatees, parties to the suit. *Aliter* where one of the residuary legatees sues for his share of the residue; an account of the estate being necessary, in that case.

Where a suit is brought for the recovery of a particular legacy, which suit, if successful, will reduce the fund bequeathed to the residuary legatee, the interest of the latter will be protected by representation; the executors representing the residuary estate and those interested therein, for the purpose of protecting it against all prior claims upon it which might diminish its amount.

The declarations of a testator, made after the execution of his will, cannot be received as evidence of what he intended by the terms nephews and nieces.

How far the situation of the testator's family relatives may be taken into consideration for the purpose of giving a construction to the doubtful clauses in his will.

As a general rule in the construction of wills, the testator must be presumed to have used words in their ordinary or primary sense and meaning; unless from the context of the will it appears that he intended to use them in some other or secondary meaning; or where, by reference to extrinsic circumstances, which existed at the time of making the will, or which must necessarily exist in the event or at the time contemplated by him, the use of such words in their ordinary or primary sense would render the provision of the will in reference to which such words were used insensible, absurd, or inoperative.

Thus the word children, in its primary and ordinary sense, means the immediate legitimate descendants of the person named; And where there is nothing to show that the testator intended to use it in a different sense, it will not be held to include illegitimate offspring, step-children, children by marriage only, grand-children, or more remote descendants.

The words nephews and nieces, likewise, in their primary and ordinary sense, mean the immediate descendants of the brothers and sisters of the person named, and do not include grand-nephews and grand-nieces, or more remote descendants.

But where the testator by one clause of his will gave a legacy unto each of his nephews and nieces except J. C. who was not a nephew but one of the children of a deceased nephew; and by another clause he gave to the children of his nephew J. C. $500; *Held* that the brothers and sisters of J. C. and other grand-nephews and nieces whose ancestors were dead at the time of making the will, were entitled to legacies; the will showing that the testator used the words nephews and nieces in an enlarged sense, so as to include all the grand-nephews and nieces whose parents were dead.

*Held* also, that upon the ordinary rules of construction, parents and children could not both take, under the description of the testator's nephews and nieces, but only the parents who were living, and those grand-nephews and nieces whose parent was dead.

THIS was an appeal from a decree of the vice chancellor of the first circuit, settling the construction of the fourth clause of the will of Peter Marks deceased, and authorizing the defendants, as executors of the decedent, to pay to the complainant and others their several legacies of $500 each, in conformity to that construction.

Peter Marks, the testator, died in March, 1845, leaving real estate, and personal property of the value of about $23,000 over and above his debts. He died without issue; and his collateral relatives at the time of his death were as follows: John Marks his brother, Catharine Emerson a niece who had three children at that time, G. W. Marks a nephew; Nicholas Cromer, John Cromer, Anthony Cromer, and Mary Carpenter, who were the grand-children of the testator's deceased sister Elizabeth, by her oldest son Nicholas Cromer who was then dead; and Valentine Killerman, John Killerman, and Mary Elizabeth Killerman, who were also grand-children of the testator's sister Elizabeth, by her deceased son Valentine Killerman. The testator also left a great grand-niece, Mary Elizabeth Ferris, who was the only child of a deceased daughter of his deceased nephew Nicholas Cromer, the father of the complainant. The testator also had a sister Catharine, who, many years previous to his death, moved to the west; and who when last heard from was in Canada. But whether she was living at the time of the death of the testator, or how many children she then had, the parties to this suit had not ascertained.

By the will of the testator, which he executed but a few days before his death, he gave certain pecuniary legacies to persons who were not his relatives, and made some dispositions of parts of his property which it is not necessary here to mention. And he gave the use or income of his real estate, for life, to his brother John, who was then under the care of a committee; and directed that the same should be sold, after his brother's death, and that the proceeds thereof should be divided among all the heirs and next of kin of the testator. He also made a similar disposition of his residuary personal estate. The third, fourth, and tenth clauses of his will were as follows:

Cromer v. Pinckney.

'*Item third.* I will and bequeath unto the children of my sister Catherine each five hundred dollars. *Item fourth.* I. will and bequeath unto each of my *nephews and nieces,* five hundred dollars; excepting *John Cromer. Item tenth.* I will and bequeath unto the children of my *nephew* John Cromer, five hundred dollars."

The complainant claimed that under the fourth clause of the will he, as a grand-nephew of the testator, was entitled to a legacy of $500; and that the testator intended to include him and his brother and sister, under the terms nephews and nieces. The bill stated that the testator, after the making of his will, in speaking of its provisions to the wife of one of his executors, said that he had left the Cromers $500 each. This fact was admitted by the answer of the defendants; but they insisted it was not admissible as evidence to change the legal construction of the will. It was also charged in the bill, and admitted in the answer, that the complainant and his brother Nicholas had at different times resided with the testator, and had always been treated by him as near relatives.

The cause was heard before the vice chancellor upon bill and answer. He decided and declared, by his decree, that G. W. Marks and Catharine Emerson, the nephew and niece of the testator, who were living at the time of the death of the testator, and all the grand-nephews and nieces of the testator the descendants of the testator's sister Elizabeth, and also his great grand-niece, all of whose ancestors, of the testator's blood, were dead at the time of making the will and at his death, were entitled to legacies of $500, according to the true meaning and construction of the fourth clause of the will; except John Cromer one of those grand-nephews, who was in terms excluded. And he decided and declared that the grand-nephews and nieces, who were the children of his niece Catharine Emerson, who was herself alive and entitled to a legacy under that clause of the will, were not entitled to legacies. The decree therefore authorized the defendants to pay those legacies, according to that construction of the will; and directed the costs of both parties in the suit to be paid out of the residu-

ary personal estate in the hands of the executors. From this decree the defendants appealed to the chancellor.

*Geo. Wood*, for the appellants. The vice chancellor erred in making any decree in the cause; the proper parties not being before the court. (*Russell* v. *Clark's Ex'rs*, 7 *Cranch*, 72. *Colt* v. *Lasnier*, 9 *Cowen*, 320.) John Marks, and in fact all persons who were legatees, or might be so considered under the will, ought to have been made parties. The respondent is not entitled to the legacy of $500, claimed under the fourth clause of the will of the testator Peter Marks. Because (1.) He is not a nephew of the testator. (2.) Because there are persons *in esse* answering the description in the will; and the court cannot construe the same so as to let in any persons not within the terms. (*Fowler* v. *Kemp*, 5 *Har. & John.* 135. *Gardner* v. *Hyer*, 2 *Paige*, 11. *Reeves* v. *Brymer*, 4 *Ves.* 698; 1 *Ves. sen.* 196. *Shelly* v. *Bryer*, 1 *Jac.* 207. *Doughty* v. *Cutter*, 23 *Wend.* 513. *Cutter* v. *Doughty*, 7 *Hill*, 305.) (3.) Because such a construction would let in great nephews and nieces to take equally with their parents, viz. Mrs. Emerson and her children, &c. (*Radcliff* v. *Buckly*, 10 *Ves.* 195. *Cutter* v. *Doughty*, 7 *Hill*, 305.) The parol declaration of the testator to Mrs. Bowers is not admissible as evidence in the cause. Because (1.) It goes to contradict the will, and cannot be received for that purpose. (*Mann* v. *Mann's Ex'rs*, 1 *John. Ch. Rep.* 231 *and cases cited.*) (2.) Because it is not shown to have been made contemporaneously with the drawing of the will. (*Nourse* v. *Finch*, 1 *Ves. jun.* 359. *Duke of Rutland* v. *Duchess of Rutland*, 2 *Peer Wms.* 158.) (3.) Because it is alleged to have been made after the will was executed. (1 *Mad. Rep.* 438.) (4.) But if admitted as evidence in the cause it does not help the respondent's case. Because a part of such declaration is shown to be untrue by the will itself, viz. in regard to the testator not having given any thing to his niece Mrs. Emerson. (*Strode* v. *Russell*, 2 *Vern.* 625. *Trimmer* v. *Byrne*, 7 *Ves.* 519. *Roberts on Wills*, *Lond. ed. of* 1809, *pp.* 454, 455; *ed. of* 1815, *vol.* 2, *p.* 46; *ed. of* 1826, *pp.* 586 *to* 588.) The decree

of the vice chancellor ought to be reversed, and the bill dismissed with costs; or at all events the decree should be so modified as not to let in any of the great nephews or nieces, but the Cromers by name.

A. *Thompson*, for the respondent. The decree from which the appeal is taken gives the true construction to the fourth clause of the will. The construction is according to the intent· of the testator. (10 *Ves.* 195. 3 *Ves. & Beames*, 69.) The third clause of the will provides for the children of the testator's sister Catharine; and it is repugnant to law, that· they should also take under the fourth clause·by the name of nephews and nieces, and thereby take double legacies. The fourth clause provides for nephews and nieces, (of which he had only a nephew and niece, Catharine's children, if any, being provided for,) unless grand nephews and nieces came in, of whom John Cromer was one. The tenth clause again names John Cromer as a nephew, and gives the legacy taken from him in the fourth clause, to his children. The testator, on the face of the will declared that John Cromer was a nephew; and his children take under that clause, as children of a nephew. The complainant and his brothers and sisters lived in the testator's family, and he always treated them as near relatives. (3 *Cowen & Hill's Notes*, 1374. 1 *Edw. Ch. Rep.* 189.) The fourth and tenth clauses show that the testator, by excluding John Cromer, and giving his children $500, a nephew's portion, did not intend that parents and children should both take under the designation of nephews and nieces; and therefore the decree properly excludes the children of Catharine Emerson, the testator's niece, from a legacy under the fourth clause. The fourth and tenth clauses also show that the testator intended that Elizabeth Ferris, the infant daughter of Catharine Ferris, deceased, who was ·the sister of John Cromer and the complainant, should receive a legacy of $500, under the designation of niece; it appearing to be the intention of the testator to give something to all his relatives. (23 *Wend.* 522. *Ambler*, 555.) The decree is also well supported by decisions. The word

children does not include grandchildren, unless the word is used as synonymous with issue or descendants, or unless the word must of necessity be extended to prevent the will's failing of effect. (1 *Edw. Ch. Rep.* 354. 7 *Paige,* 328. 1 *Edw.* 41. 8 *Paige,* 375. 23 *Wend.* 513. 10 *Ves.* 195. 3 *Ves. & Beames,* 69.) But we find another class of cases where on the face of the will the words child, grandchild, nephew or niece, show a clear intention of including persons more remote; and then the words take an artificial meaning. (23 *Wend.* 522.) Such cases generally begin and end with the particular clause, where the word is used. Such is this case. The words nephews and nieces are used only in the fourth clause of the will, and the word nephew only in the tenth clause of the will, and in both of which John Cromer, the brother of the petitioner, is clearly named a nephew. The children of Catharine, the testator's sister, having been provided for in the third clause of the will, nephews and nieces could not be found, unless grand nephews and nieces should be included. (23 *Wend.* 522.)

Again; the testator cannot be considered ignorant of the class from which he excluded John Cromer in the fourth clause; nor can it be inferred that he intended, by the tenth clause, to provide for John Cromer's children only; and cut off his grand-nephews and nieces, and the infant, Elizabeth Ferris. There is another class of cases, similar to the present, in accordance with which the decree appealed from was made, and which are decisive of this appeal. In *Hussey* v. *Dillon,* (*Amb.* 603,) various bequests were made to grandchildren and great-grand-children; the residue was bequeathed to grandchildren. There the calling a great-grandchild a grandchild, was deemed con-clusive, and let in the whole class of great-grandchildren. In *Shelly* v. *Bryer,* (1 *Jacob,* 207,) the testator gave the residue of his estate, after the death of his sister, &c. to his nephews and nieces then living. Subsequently, by a codicil, he gave to his infant niece, (who in reality was a grand-niece,) Harriet Shelly, £500, at one year after his decease, over and above her share after the decease of his sister, in the body of his will treated of more at large. Harriet Shelly commenced her suit

Cromer *v.* Pinckney.

for the £500. Under the decree in the cause, the master had taken the accounts of the testator's estate, and had made the necessary inquiries as to the state of his family; and the cause came on for further directions. The counsel for Harriet Shelly contended that the fund was divisible between the testator's nephews and Harriet Shelly, she being specifically named in the codicil as one of the persons to take. The counsel for the great-nephews and nieces contended that they were entitled to share equally with the nephews, on the authority of *Hussey* v. *Dillon.* The master of the rolls observed that it was a difficult case; that though the codicil must be taken with the will, yet it was not actually the same as if it formed part of it; and that he considered that the testator was writing from recollection of his will, and had mis-recollected it; but that the difficulty was that if the words were to be extended to Harriet Shelly, the same must be done as to the other great nephews and nieces, and both classes, including parents and children, must take together under the same denomination; and therefore he excluded her and the grand-nephews and nieces from sharing the residue equally with the nephews and nieces. The principle of this case is the same as held in 1 *Edwards,* 41; 8 *Paige,* 375, and 23 *Wend.* 522, that though persons may take under an artificial description under some clauses of a will, yet such fact will not necessarily enlarge the signification of other parts of the will. All these cases sanction the authority of *Hussey* v. *Dillon,* and show that the term nephew and niece being used with the intention of including persons more remote, take an artificial meaning: and are held to mean—when a construction of the particular clause where the word is used is sought, (as in this case)—to include such more remote persons. Thus "children" have been held to include grandchildren; and even great-grandchildren; and have even been extended to the remotest of the living descendants. (4 *Vesey,* 437. *Ambler,* 555, 681. 23 *Wend.* 522.) *Shelly* v. *Bryer* did not follow *Hussey* v. *Dillon,* though it sanctioned it, because the word upon which the construction of the will was sought to be extended was in the codicil only; conceding that if the expression had been in

Cromer *v.* Pinckney.

the body of the will, all the great nephews and nieces would have come in. But in our case the words nephews and nieces except John Cromer, are in the very section to be passed upon. Upon authority there cannot be a doubt that the decree is right as to all therein stated to be entitled to a legacy.

The decree in favor of Elizabeth Ferris, the infant daughter of Catharine Ferris, late wife of Jacob Ferris, is also well supported by authority. Elizabeth's mother was the sister of John Cromer and Anthony Cromer the complainant. The testator evidently intended, under the fourth clause of his will, to provide for all his collateral relatives, except John Marks and the descendants of his sister Catharine. The disposition of the residuum of the real estate, by the second clause of the will, and of the residuum of the personalty, by the eleventh clause of the will, show that he intended all his relatives should be provided for, and therefore the infant Elizabeth should be included by force of 1 *Ves. sen.* 196; *Ambler*, 555, and 2 *Bro. C. C.* 125. Surely this court, which should protect this infant and half orphan, and whose father is too poor to pay for looking after her interest, will not be astute to leave her the only relative who receives nothing under the testator's will. The complainant did not, by his bill, claim this legacy for said Elizabeth Ferris. The vice chancellor has named her as entitled to a legacy of $500. The appeal is from the whole decree, and Elizabeth Ferris' legacy is not the subject of a specific appeal. The complainant's counsel has felt himself bound to attempt to preserve it to her; and there appears to be no good reason to reverse the decree on her account. The executors were the only necessary defendants, the fund being ample; and John Marks being a lunatic and then without a committee, need not to have been a party in any case. The defendants also demurred to this bill for want of parties, which was overruled October 16, 1845, and no appeal has been taken from that order. (3 *John. Ch.* 553. 4 *Id.* 199. 1 *Id.* 438. 1 *Paige*, 270. 2 *John. Ch.* 245.)

Cromer v. Pinckney.

The Chancellor. The objection that the residuary lega-
tees and all other persons who were entitled to legacies under
the will should have been made parties to the suit, was not
made in the answer of the defendants. It was too late, there-
fore, to make it at the hearing; even if the objection would
have been valid if made in the answer, or by a demurrer to the
complainant's bill. I think, however, all the necessary parties
were before the court to enable the complainant to claim his
general legacy under the fourth clause of the will. The bill
showed that no account was necessary; and as a general rule
a legatee may sue the executor for his own particular legacy
without making the residuary legatees, or any other legatees,
parties to the suit. The case is otherwise where one of the
residuary legatees sues for his share of the residue. For as an
account of the estate must be taken in that case, the executor
may insist that the other residuary legatees shall be brought
before the court; to save him the trouble of accounting, a second
time, at their suit. (*Pritchard* v. *Hicks*, 1 *Paige's Rep.* 270.)
It is true the particular legacy claimed, if allowed, will reduce
the fund bequeathed to the residuary legatee, who is therefore
interested in the question. But this is one of those cases in
which the interest of the residuary legatee is protected by rep-
resentation; the executors representing the residuary estate and
those interested therein, for the purpose of protecting it against
all prior claims upon it, which might diminish its amount.
(*Calvert on Part.* 20. *Wainwright* v. *Waterman*, 1 *Ves.
jun.* 313. *Anon*, 1 *Vern.* 261. *Lawson* v. *Baker*, 1 *Bro. C.
C.* 303.)

The declarations of the testator could not be received, as evi-
dence of what he intended by the terms nephews and nieces.
But the situation of the testator's family relatives, and the fact
that these grand-nephews and nieces, together with the child
of the complainant's deceased sister, were at the time of the
making the will the only representatives of the testator's de-
ceased sister Elizabeth, are proper to be taken into considera-
tion, in connection with what appears upon the face of the will,

for the purpose of giving a construction to the fourth clause, and to ascertain what the testator meant.

As a general rule, in the construction of wills, the testator must be presumed to have used words in their ordinary or primary sense and meaning; unless from the context of the will it appears that he must have intended to use them in some other, or secondary sense; or where by reference to extrinsic circumstances which existed at the time of making of the will, or which must necessarily exist in the event or at the time contemplated by him, the use of such words in their ordinary, or primary sense, would render the provision of the will in reference to which such words were used insensible, absurd, or inoperative. Thus the word children, in its primary and ordinary sense, means the immediate legitimate descendants of the person named. And where there is nothing to show that the testator intended to use it in a different sense, it will not be held to include illegitimate offspring, step-children, children by marriage only, grandchildren, or more remote descendants. (*Radcliffe* v. *Buckley*, 10 *Ves*. 195. *Earl of Orford* v. *Churchill*, 3 *Ves. & Bea.* 69. *Izard* v. *Izard's Ex'rs*, 2 *Desaus. Rep.* 309. *Gardner* v. *Heyer*, 2 *Paige's Rep.* 11. *Hussey* v. *Berkeley*, 2 *Eden's Rep.* 194.) The words nephews and nieces, likewise, in their primary and ordinary sense, mean the immediate descendants of the brothers and sisters of the person named; and do not include grand-nephews and grand-nieces, or more remote descendants. (*Falkner* v. *Butler*, *Amb. Rep.* 514. *Shelly* v. *Bryer*, *Jacob's Rep.* 207.) But there are several circumstances, in the case now under consideration, from which it may fairly be inferred that the testator, in the fourth clause of his will, used the words nephews and nieces in a secondary sense; so as to include the more remote descendants of his sister Elizabeth, except her grandson John Cromer. The fact that the testator excepts John Cromer by name, he being a grand-nephew only, from the class of nephews and nieces to whom he gave legacies of $500 each, and that he also gave a similar legacy to his children collectively, by the description of the children of his *nephew* John Cromer, very clearly shows he

Cromer v. Pinckney.

did not intend to confine his bounty to the immediate descendants of his brother and sisters only, in cases where immediate descendants had died leaving issue.

Again ; I infer from the bill and answer, though that fact is not stated in terms, that the testator's brother was a lunatic, and had been under the charge of the testator as his committee. The principal part of the estate is given to that brother for life, and after his death it is devised and bequeathed to all the testator's collateral heirs. And the third and fourth clauses of the will appear to have proceeded upon the principle of giving to each of those who were to share in the ultimate remainder, in the residuary estate, a legacy of $500 in the meantime. The testator therefore, by the third clause of the will, gives to each of the children of his sister Catharine a legacy of $500 ; and then, by the fourth clause, he gives to each of his other nephews and nieces, except John Cromer, whose children are provided for in the 10th clause, a similar legacy of $500. And as the testator himself showed that the words nephews and nieces were not used in their primary sense, of immediate descendants of brothers and sisters, they were broad enough to reach more remote descendants of his sister Catharine, if any of her children had died, leaving issue. But it would be out of the usual course of construction to give to the children of his sister Catharine double portions, or distinct legacies, under the third and also under the fourth clauses of the will ; or to permit both parents and children to take under the description of nephews and nieces of the testator. The vice chancellor was therefore right in holding that the three children of Catharine Emerson were not entitled to legacies, and that she took a legacy, as a niece of the testator, under the fourth clause of his will.

I am also inclined to think the vice chancellor was right in deciding that the great-grand-niece of the testator, Mary Elizabeth Ferris, whose ancestors of his blood were all dead at the time of making the will, was also entitled to a legacy under the fourth clause of the will. But even if the declaration in the decree is wrong in that respect, it cannot be reversed or altered upon this appeal, to which that legatee is not a party. The

decree, therefore, clearly is not erroneous so far as the rights of the parties to this appeal are concerned. It must therefore be affirmed, with costs.