GEORGE A. GODDARD *vs.* FRANCIS AMORY & others.

Suffolk.    March 30, 1888. — May 5, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Devise and Legacy — Nephews and Nieces — Blood Relations.*

A testatrix, in a will disclosing a general intention to dispose of the bulk of her property to relatives by blood, gave the income of a trust fund to "my nephews and nieces living at my decease," the fund to be divided at the death of the survivor of them "amongst the descendants of my nephews and nieces." At the date of the will and at the testatrix's death there were living two nephews, one of whom was married; the widow of a deceased nephew; and two brothers, aged sixty-six and sixty years respectively, the younger being married and his wife being sixty-four years of age. *Held,* that the bequest did not include wives of nephews.

BILL IN EQUITY, filed December 23, 1887, by the trustee under the will of Cornelia Loring, against a nephew and the wives, children, and grandchildren of deceased nephews of the testatrix, for instructions as to the disposition of a trust fund.

The bill alleged that Cornelia Loring made a will, dated October 5, 1874, which, after providing for the payment of small legacies to various persons, proceeded as follows:

" Fourteenth. I give to my brother-in-law Nathaniel Goddard the sum of three thousand dollars out of the property held by him for my benefit under the provisions of an indenture, dated June 29th, 1850, signed by him and by my late husband Charles G. Loring and myself.

" Fifteenth. I also give to said Nathaniel Goddard ten thousand dollars out of said property, in trust to invest the same and to pay over the net income thereof to Mary S. Fuller, wife of Henry W. Fuller, during her life, and upon her decease to pay over the principal to her daughters then living, share and share alike, the issue however of a deceased daughter to take a share; and I direct that no bond or sureties on his official bond shall be required of him, as such trustee, and the remainder of said property I give to my son George A. Goddard, or in the event of his decease in my lifetime leaving no wife or children, one half of said remainder to the heirs at law or next

of kin of his father at the time of the decease of said George, and the other half to the President and Fellows of Harvard College. In the event of the decease of my son in my lifetime leaving a wife or children, I give the income of the whole of said property to his wife for her life, and, subject only to said life estate in said income, I give the whole of said property to said children, or failing such children I direct that the same be divided as aforesaid. It is my will that none of the legacies given in the preceding clauses shall be paid out of the said property held by Nathaniel Goddard, but in case the available funds which I shall leave at my decease (other than those named in the first clause of this will) shall be insufficient for the payment of said legacies, I give and appropriate out of the income or principal of the residue of my father's estate now held in trust under the terms of his will whatever sums may be needed to pay said legacies.

"Sixteenth. I give from the rest and residue of my estate, or from what I have the power of appointment, ten thousand dollars to my son George A. Goddard in trust, to keep the same invested, and to pay so much of the net income therefrom during the lives of my nephews and nieces living at my decease and the survivor of them, to those or the issue of those that are most needy, at such times as he thinks best, he keeping invested any income not divided by him, and upon the death of the survivor to divide the principal and any accrued income amongst the descendants of my nephews and nieces who in his judgment may be most in need of the same. I authorize him by will or otherwise to appoint his successor in said trust. Said trustees to be exempted from giving bonds. I give to the said George A. Goddard all the rest and residue of my estate, together with my share of the principal of the residue of my father's estate now held in trust under his will, and my share of the income thereof during the lifetime of my brothers, subject to the provisions contained in the last preceding clause, and any other property of which I have the power of disposing by will: but in the event of my son's decease in my lifetime, leaving no wife or children, I give one half of said residue and other property to the heirs or next of kin of my son on his mother's side, and one half to the President and Fellows of Harvard College to be

applied by them to the education of young women in such way as may seem best to them. And in case of the decease of my son in my lifetime leaving a wife or children, I give the income of the whole of said residue and other property to his wife for her life, and, subject only to said life estate in said income, I give the whole of said residue and other property to said children, or failing such children I direct that the same be divided as aforesaid."

The bill also alleged that at the time of the execution of the will, and when it was admitted to probate, which it was agreed was on October 25, 1875, there were living the following persons, either relations by blood or connected by marriage with the testatrix: Francis Amory, a nephew; George K. Amory, a nephew, and Adelaide Amory, his wife; Ellen D. Amory, the widow of John L. Amory, a deceased nephew; an unmarried brother, aged about sixty-six years; and a married brother, who was about sixty years of age and whose wife was about sixty-four years of age.

The bill further alleged, that the wives of the nephews were not relatives by blood of the testatrix; that Adelaide Amory was divorced from George K. Amory in or about 1881; that George K. Amory had by her two children, who were minors, and both of whom were living; and that John L. Amory left several children by Ellen D. Amory, one of whom was a minor, and another of whom had several children, all of whom were minors; and that Adelaide Amory, if within the clause provided for in the sixteenth section of the will, was one to whom the trustee should from time to time make payments from the fund therein created.

The prayer of the bill was that the plaintiff might be instructed as to whether he had authority to pay any part of the income of the trust fund to Adelaide Amory or Ellen D. Amory.

The answer of Adelaide Amory and Ellen D. Amory admitted the allegations of the bill, and contended that they were nieces of the testatrix, and that the trustee had the right to pay to them portions of the trust fund or of the income.

The answers of the other defendants also admitted the allegations of the bill, but contended that Ellen D. Amory and

Adelaide Amory were not nieces of the testatrix, and were not included within the provisions of the sixteenth clause of the will, and that the trustee had no power to pay any portion of the fund or of its income to them.

Hearing on the bill and answers before *W. Allen*, J., who reserved the case for the consideration of the full court.

*W. I. Badger*, for the plaintiff.

*S. Lincoln*, for Adelaide Amory and Ellen D. Amory.

*W. H. Gudgel* (of Indiana), for certain children of Ellen D. Amory.

*G. P. Sanger*, for certain other children and descendants of the nephews.

MORTON, C. J.   By her will the testatrix gave ten thousand dollars to George A. Goddard, " in trust, to keep the same invested, and to pay so much of the net income therefrom during the lives of my nephews and nieces living at my decease and the survivor of them, to those or the issue of those that are most needy, at such times as he thinks best, he keeping invested any income not divided by him, and upon the death of the survivor to divide the principal and any accrued income amongst the descendants of my nephews and nieces who in his judgment may be most in need of the same."

At the date of the will and at the time of her death, the testatrix had two nephews, one of whom only was alleged to be married, and two brothers of the ages respectively of sixty-six and sixty years.   Ellen D. Amory, the widow of John L. Amory, a deceased nephew of the testatrix, was then and is now living. The only question presented in this case is whether the wife of the living nephew and the widow of the deceased nephew are included within the terms " my nephews and nieces living at my decease."   According to the modern usage, the word " niece " or " nieces " means the daughter or daughters of a brother or sister. It does not by its accepted meaning include the wives or widows of nephews.   The bequest to " my nephews and nieces " should be construed according to its legal signification, unless it appears from the will that the testatrix intended to use it with a more extended meaning.   It is argued that, as she left no nieces by blood, the word " nieces " cannot be satisfied unless she meant to include the wives of nephews.

But we think, looking at the whole will, that this was not her intention. She had two brothers, and it was possible that one of them might have a daughter or daughters born to him, in which event the use of the word " nieces " was necessary in order to insure an equality among her blood relations in equal degree. The will throughout shows a general intention to dispose of the bulk of her property to relatives by blood. In the clause we are considering, she intends to make provision for two generations, her nephews and nieces and their descendants. Upon the death of the survivor of the nephews and nieces, the principal of the fund is to be divided " amongst the descendants of my nephews and nieces." According to the construction claimed by the wives of the nephews, if a nephew dies or is divorced and his wife marries again and has children, the principal of the fund might go to such children, to the exclusion of the children of the nephews of the testatrix. We cannot doubt that this would defeat her purpose and intention. She intended to provide for the descendants of her nephews and nieces who were her relations by blood; and the words "and nieces" in this connection have some tendency to show that she had in her mind, not her nephews' wives, but a possible class of nieces by blood. We cannot believe that in this clause she intended to provide for the descendants of a widow or divorced wife of a nephew, who were strangers to her in blood and affection.

Taking the whole will together, we are of opinion that she intended to use the words " my nephews and nieces living at my decease " in their primary and natural sense, and therefore that the trustee has no right to pay any portion of the income of the fund to the wives or widow of the testatrix's nephews.

*Decree accordingly.*