MARIE FEDI, BY HER NEXT FRIEND, NICOLINA ARMENTI. PETITIONER-RESPONDENT, v. EDWARD A. RYAN, DE-FENDANT-PROSECUTOR.

Submitted May 4, 1937—Decided July 28, 1937.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *James J. Carroll (Clarence B. Tippett,* of counsel).

For the respondent, *Charles A. Rooney.*

The opinion of the court was delivered by

HEHER, J. On July 24th, 1932, Nicola Armenti was killed by an accident arising out of and in the course of his employment; and the question for decision is whether his dependent niece "by marriage" is embraced within the class entitled to compensation under the provisions of paragraph

12 (g), section 2, of the Workmen's Compensation act of 1911, as amended by chapter 135 of the laws of 1928. *Pamph. L.* 1911, *pp.* 134, 139; *Pamph. L.* 1928, *pp.* 281, 286. The infant respondent is the daughter of a sister of the deceased's wife. It is stipulated that at the time of the employe's death, she was approximately seven years of age, and was, and for five years prior thereto had been, a member of his family, actually dependent upon him.

The primary question at issue is the legislative intention, as expressed in the statute. The reason and spirit of the act, or, in other words, the apparent legislative intent evinced, by the language employed, considered in relation to the subject of the legislation, prevail over its letter. And the words used to declare the legislative purpose, if of common use, are to be taken in their natural, plain, obvious and ordinary signification, unless modified by the context. But a word having a technical significance as well is given that sense where the nature of the subject indicates, or the context suggests, that it has been so used. The general object of a particular act is always to be looked to in aid of a correct comprehension of its intention. The sense in which the words were intended to be used, as gleaned from the context, provides the key to the understanding of the statute; and their ordinary meaning may be enlarged, restricted or qualified to give effect to the intention so disclosed. *Hackensack Trust Co.* v. *Hackensack,* 116 *N. J. L.* 343; *Oakland* v. *Board of Conservation and Development,* 98 *Id.* 806; *State, Gregory et al.* v. *Mayor and Aldermen of Jersey City,* 36 *Id.* 166; *Lewis' Sutherland Statutory Construction* (*2d ed.*), §§ 347, 358, 376, 394. Yet plain and unambiguous words not rendered dubious by the context cannot be controlled by judicial construction. *Public Service Co-ordinated Transport* v. *State Board of Tax Appeals,* 115 *Id.* 97.

In their primary technical sense, the words "nephews" and "nieces" import a consanguineous relationship. *Bouvier's Law Dictionary* (*Rawle's 3d ed.*) defines "niece" as the "daughter of a brother or sister. *Ambl.* 514, 1 *Jac.* 207." It is so defined in *Black's Law Dictionary.* According to the civil law, a nephew or niece is in the third degree of con-

sanguinity; at the common law, in the second degree. 2 *Bl. Com.* 206. The rule of the civil law seems to prevail in this country. 2 *Hill R. P.* 194.

And by modern usage, the word "niece" means "the daughter * * * of a brother or sister." *Goddard* v. *Amory,* 147 *Mass.* 71, 74; 16 *N. E. Rep.* 725. In its primary and ordinary legal usage, it refers to the immediate descendants of one's brothers and sisters, to the exclusion of grandnephews and grandnieces or more remote descendants. *Cromer* v. *Pinckney,* 3 *Barb. Ch.* 466, 475. It is only by courtesy that the children of a husband's or wife's brothers and sisters are called "nephews" and "nieces," just as it is in relation to a husband's or wife's father and mother. *Appeal of Green,* 42 *Pa.* 25, 30. See, also, *In re Root's Estate,* 187 *Id.* 118; 40 *Atl. Rep.* 818; *Lewis* v. *Fisher,* 2 *Yeates* (*Pa.*) 196, 199; *State* v. *Tucker,* 174 *Ind.* 715; 93 *N. E. Rep.* 3. In the usual legal sense, these terms connote the degree of a consanguineous relationship. *Capps* v. *State,* 87 *Fla.* 388; 100 *So. Rep.* 172. In *Grieves* v. *Rawley,* 10 *Hare* 63, 64; 44 *Eng. Ch.* 61; 68 *Reprint* 840, Vice-Chancellor Turner, construing a decree, ruled that "the description of nephews and nieces includes the child of a brother or sister of the half blood." But that, too, is a relation of consanguinity; and the vice-chancellor observed that "in the description of nephews and nieces there is not, I think, any distinction generally made between children of whole or half brothers and sisters. The relation of uncle and nephew or niece is of course founded on and derived from the relation between the uncle and the parent of the nephew or niece, but the first mentioned relation is so generally recognized and understood that, in speaking of it, the nature and degree of the second mentioned relation is not, I think, generally regarded. It would, for instance, as I conceive, be a great surprise in anyone to be told that the child of his half-brother or sister was not his nephew or niece." Thus, the ground of the decision was that this is a blood relationship which in common parlance and intent was so considered and described. Although the general dictionary definition is not conclusive, it is well to point out that the lexicographers seem to be

in accord on the meaning of the term. *Dr. Johnson's Dictionary* defines "nephew" as "the son of a brother or sister," and "niece" as "the daughter of a brother or sister." *Webster's International Dictionary* (*2d ed.*) defines "niece" as "a daughter of one's brother or sister, or, somewhat loosely, of one's brother-in-law or sister-in-law." But, in the interpretation of legislative enactments, the term is to be given its usual legal, and not its loose, irregular, sense and significance, unless the context exhibits an intention to employ it in the latter or a broader sense.

We see no force to the contention that the normal significance of the term is one thing when used in legislative enactments and another—much narrower—when employed to express a testamentary purpose. In either case, the quest is for the intention; and, in its ascertainment, words are to be given their generally understood meanings, unless qualified by the context or the general object. "In a will, as in a statute, the spirit is to prevail, and the letter is not to be adhered to if a different signification can be gathered from the whole context of the instrument." *In re Hunt's Estate,* 117 *N. Y.* 522; 23 *N. E. Rep.* 120. It was there pointed out that, in the construction of wills, the general rule is (citing *Cromer* v. *Pinckney, supra*) that "the testator must be presumed to have used words in their ordinary primary sense or meaning." That primary rule is likewise apposite in the interpretation of legislative acts. There is no distinction to be made on principle.

Moreover, there is a characteristic difference in popular understanding between consanguinous and affined relationships. In common usage, the qualifying words "by marriage" are employed to mark the distinction.

We do not discern in the enactment under review a purpose to embrace in the category of "nieces and nephews" those holding that relation by mere affinity. True, the primary requisite is actual dependency. But a secondary requirement, equally vital, is that the dependent shall also bear one of the enumerated relationships. The two elements must combine to entitle the claimant to compensation. And the legislature plainly had in mind the distinction between consanguinous

and affined relationships; it specifically listed those of the latter class entitled to the benefits of the act. While it was held in *Newark Paving Co.* v. *Klotz,* 85 *N. J. L.* 432; *affirmed,* 86 *Id.* 690, that the word "children," as used in the statute before the amendment of 1913 (*Pamph. L., pp.* 302, 305), "may well be held to include dependent step-children," the amendments expanding the favored class of affined relations demonstrate a purpose to carefully limit it to those designated. *Pamph. L.* 1913, *pp.* 302, 305; *Pamph. L.* 1919, *pp.* 201, 206; *Pamph. L.* 1923, *pp.* 101, 106; *Pamph. L.* 1928, *pp.* 281, 286. And in *Splitdorf Electrical Co.* v. *King,* 90 *N. J. L.* 421; *affirmed,* 92 *Id.* 524, it was held that the term "grandchildren" was "used in its ordinary sense and as applicable only to persons who stood legally in that relation to the decedent workman, and not as intending to alter the common law rule by making one who could not stand in such relation a grandchild;" and the illegitimate child of the deceased workman's daughter was excluded from the statutory class of grandchildren. It was pointed out that the provision for illegitimate children was significant of a purpose to exclude from the classification of "grandchildren" those who do not have "such legal status." The course of legislation since the rendition of that judgment is indicative of legislative acquiescence in this interpretation that, in the absence of a clear expression to the contrary, the statute contemplates a legal consanguineous relation, as well as actual dependency. There is nothing to suggest that the terms "nephews" and "nieces" were used in other than this primary significance.

The legislative direction for a liberal construction does not warrant the extension of the scope and sweep of the statute beyond that expressly provided, or reasonably to be implied. Compare *Public Service Electric and Gas Co.* v. *City of Camden,* 118 *N. J. L.* 245. It calls for a broad interpretation to advance the declared policy of the statute within the prescribed limits.

The judgment of the Hudson Common Pleas, affirming the award of compensation made in the compensation bureau, is accordingly reversed, but without costs.