88 N.J. Super. 131 (1965)
211 A.2d 201
LAILA M. STELLMAH, PETITIONER-RESPONDENT,
v.
HUNTERDON COOPERATIVE G.L.F. SERVICE, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1965.
Decided June 8, 1965.
*132 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Scott Scammell argued the cause for appellant (Messrs. Large, Scammell & Danziger, attorneys).
Mr. Herbert T. Heisel, Jr. argued the cause for respondent (Mr. Thomas J. Beetel on the brief).
The opinion of the court was delivered by FOLEY, J.A.D.
Respondent appeals from a judgment of the County Court affirming a judgment of the Workmen's Compensation Division which awarded Frank Michael Stellmah, Jr., an infant, dependency benefits provided for in N.J.S.A. 34:15-13.
The undisputed facts, mainly stipulated, are as follows: On June 26, 1961 Frank M. Stellmah, Sr. suffered an accident which arose out of and in the course of his employment by respondent. He died the same day. Surviving were his widow, the petitioner herein, a seven-year-old child of the marriage Susan L. Stellmah, and Frank M. Stellmah, Jr. (Frank), two years and seven months of age.
Frank is not related by blood or marriage to either the petitioner or her deceased husband. He was born in Montreal, Canada, on September 25, 1958, and was placed for adoption *133 with La Societe D'Adoption et de Protection de L'Enfance in Montreal. In July of 1958 Mr. and Mrs. Stellmah applied to the Catholic Welfare Bureau of Trenton, a state approved adoption agency, for the adoption of a child. In February 1960, through that agency, they were notified by the Societe that a child was available for adoption in Montreal. The Stellmahs went to that city and on February 26, 1960 received Frank. Simultaneously they executed an affidavit of support and a written agreement which stated in part that:
"The Party of the Second Part recognizes that the custody of said child is in view of a future legal adoption. * * *"
Since then Frank has resided continuously in the Stellmah household.
In the normal course of events Frank would have been adopted on or about February 26, 1961, i.e., one year after the placement. However, he developed a speech problem, and approval for adoption was postponed pending the completion of tests which were designed to determine whether the speech difficulty was merely functional in nature, or whether it was due to an organic lesion. The last of the tests was completed on June 2, 1961, and on June 19, 1961, one week prior to the fatal accident, a doctor associated with the Hunterdon Medical Center transmitted to the Catholic Welfare Bureau a report in which he stated that he did not find evidence of any gross nervous system abnormality or deficit, and recommended a thorough physical and psychological examination. However, it was the doctor's opinion that delay of the adoption was not necessary.
Adoption proceedings were commenced in the Montreal Social Welfare Court on August 3, 1961. A "certificate of judgment" was rendered on September 11, 1961, ordering the adoption of the child by Frank M. Stellmah and his wife, but this was after the fatal accident. While it is not an issue in the case, we pause to question the legality or propriety of an award of adoption to a deceased person.
*134 Respondent acknowledged that Stellmah's death was compensable and commenced the payment of dependency benefits to the widow and the infant Susan. However, it denied liability to pay dependency benefits to Frank upon the ground that he was not a legally adopted child of the decedent on the date of the accident and death.
N.J.S.A. 34:15-13(g) defines dependents thus:
"The term `dependents' shall apply to and include any or all of the following who are dependent upon the deceased at the time of accident * * * or at the time of death, namely: Husband, wife, parents, stepparents, grandparents, children, stepchildren, grandchildren, child in esse, posthumous child, illegitimate children, brothers, sisters, half brothers, half sisters, niece, nephew. Legally adopted children shall, in every particular, be considered as natural children. Dependency shall be conclusively presumed as to the decedent's widow and natural children under 18 years of age who were actually a part of the decedent's household at the time of his death. * * *" (Emphasis added)
The sole question for determination is whether Frank is to be considered a legally adopted child within the intendment of the statute.
The judge of compensation, in granting the award, reasoned that the child, admittedly wholly dependent upon the deceased, "succeeded to the same rights as those of a technically legally adopted child" since the decedent voluntarily stood in loco parentis to him. The County Court affirmed verbatim the determination of the judge of compensation, adding that it was "also obvious that the adoption proceedings really began at the time deceased and petitioner agreed with the Agency in Canada that they would accept the child for adoption," and that the "time within which the adoption was completed was reasonable and it was done without delay."
There is, as we have stated, no question that the child was wholly dependent upon the deceased. A dependent under the act has been defined as "one who is sustained by another or relies for support upon the aid of another." Ricciardi v. Damar Products Co., 82 N.J. Super. 222, 226 (App. Div. 1964). However, dependency alone, in the frame of reference *135 in which it here appears, is not the sole test of the statutory term "dependent," since the statute also requires that the dependency be within the framework of one of the relationships specified therein. It was so held in Fedi c. Ryan, 118 N.J.L. 516 (Sup. Ct. 1937). In Fedi the question was whether a dependent niece "by marriage" was embraced within the predecessor statute of that here in question. The "niece" was the daughter of a sister of the deceased's wife. She was approximately seven years of age, and for five years prior to the employee's death had been a member of his family actually dependent upon him. Pointing out that the word "niece" means the daughter of a brother or sister, the court said that it did not discern in the act a purpose to embrace in the category of "niece or nephew" those holding that relationship by mere affinity, as distinguished from consanguinity, and then went on to say:
"* * * the primary requisite [of the act] is actual dependency. But a secondary requirement, equally vital, is that the dependent shall also bear one of the enumerated relationships. The two elements must combine to entitle the claimant to compensation." at p. 519
It is said generally that:
"Where the statute includes children of parents who become such by `legal adoption,' it is not enough that a child is taken into the home and treated as one of the family; there must be legal adoption, and this is the rule wherever the statute includes adopted children without prescribing a method of adoption. The adoption must have taken place before the death of the employee." 99 C.J.S. Workmen's Compensation § 141(2)b, p. 483 (1958).
See also 58 Am. Jur., Workmen's Compensation, § 177, pp. 695-696 (1948); Annotations, 13 A.L.R. 707, 30 A.L.R. 1265-1266, 86 A.L.R. 879. And see State ex rel. Varchmin v. District Court of Ramsey County, 133 Minn. 265, 158 N.W. 250 (Sup. Ct. 1916); Ellis v. Nevius Coal Co., 100 Kan. 187, 163 P. 654 (Sup. Ct. 1917).
It is true that the Workmen's Compensation Act, being remedial in nature, must be liberally interpreted to *136 effectuate its beneficent purposes. However, a court under guise of liberal interpretation may not give plain and unambiguous words something other than their usual and accepted meaning. Had the Legislature wished to include, within the enumerated classes, infants to whom a deceased stood in loco parentis, or who resided with him pending a formal order of adoption it could readily have said so. In choosing the words legally adopted and in granting to those having such status the benefits conferred upon natural children, in our view, the Legislature contemplated that the legal requisites necessary to an adoption and consequent change of status would be completed prior to the employee's death. The plain and simple fact is that this child had not been legally adopted by decedent prior to his death and therefore was not a legally adopted child within the meaning of the statute. While we have no doubt that had Stellmah lived he would have adopted the child, we cannot permit sympathy to override the clearly written legislative design.
Reversed, no costs.