themselves, one-half the sum deposited, was not error, as each daughter had an undivided one-half interest in the whole sum, and no release had been executed by defendants to the one-half which would have remained on deposit.

Appeal from special term, New York county.

Action for partition by Sophia Lochner against Elizabeth Maas and Mary E. Gasteyer. The motion of defendants for an order requiring the referee to pay them one-half of a sum of money, the proceeds of the sale of lands of the estate, set aside to represent the dower interest of the defendant Maas, being denied, the defendants appealed.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Roe & Macklin,* for appellants. *Frederick W. Holls,* for respondent.

VAN BRUNT, P. J. This action was brought to obtain partition and sale of certain premises in the city of New York. The appellant Elizabeth Maas had a dower right in said premises, the half of which was owned by the plaintiff, Lochner, and the defendant Mary E. Gasteyer. Out of the proceeds of sale the sum of $4,331.09 was deposited in the Central Trust Company by the referee to satisfy the claim for dower upon said premises, the doweress being entitled to the income thereof for life, and the remainder belonging to the plaintiff, Lochner, and to the said defendant Mary E. Gasteyer, equally. A motion was made upon an affidavit alleging that it had been agreed between the doweress and Mary E. Gasteyer that one-half of said sum should be paid to them at once, leaving the residue of said dower fund in court until the decease of said Elizabeth Maas, or until the further order of the court, for an order directing that the referee pay half of said sum to said Elizabeth Maas and Mary E. Gasteyer. This motion having been denied, from the order thereupon entered this appeal is taken. We cannot see by what right the appellants claim to take half of this fund from the court and leave the balance remain. It is true that the plaintiff and Mrs. Gasteyer own equally this fund, subject to the life-estate of their mother, Mrs. Maas. But as this seems to have been set aside to represent the dower of the mother in the premises sold, such dower attaches to the whole fund, and the interest also of the remainder-men attaches to the whole fund. It is difficult to see upon the papers before the court what authority the court had to pay out this fund, there being no release whatever contained in the papers of the interest of Mrs. Gasteyer in the fund remaining in the hands of the trust company. It is claimed that the mother was willing to release her dower as to this half of the fund, and therefore there was no reason why it should not be paid over to the remainder-men. But this does not answer the proposition that there has been no release of any of the rights or interest whatever in the balance of the fund tendered to anybody, and such release would not operate by the mere taking of one-half of the fund. It would require some more formal action to convey the whole title in the remaining portion of the fund to the plaintiff subject to her mother's right of dower. We think, therefore, that the order appealed from was correct, and that it should be affirmed, with $10 costs and disbursements.

BRADY and DANIELS, JJ., concur in the result.

---

### *In re* HUNT'S ESTATE.

*(Supreme Court, General Term, First Department. July 9, 1889.)*

WILLS—CONSTRUCTION—"NEPHEWS AND NIECES."

A residuary devise "unto my nephews and nieces hereinbefore named" does not include legatees previously mentioned in a separate clause of the will, and described as the children of testator's deceased niece, and nowhere classed with testator's nephews and nieces, to a number of whom legacies are given.

Appeal from surrogate's court, New York county.
Argued before VAN BRUNT, P. J., and DANIELS and BARTLETT, JJ.
*Charles H. Johnson*, for appellants.  *Charles H. Knox*, for respondents.

BARTLETT, J.  This is an appeal from a final decree of the surrogate's court upon a settlement of the account of the executors of Noah S. Hunt, deceased.  In order to make the decree, it was necessary for the surrogate to determine what persons were entitled to share in the residuary estate of the testator under the twelfth clause of the will.  He construed that clause in such a way as to exclude the children of the testator's deceased niece, Mary Jane Gray, from any participation in the distribution of the residuum, and the only question to be determined on this appeal is whether such construction is correct.  Under the will the principal recipients of the testator's bounty are various nephews and nieces.  One nephew receives an absolute legacy of $7,000, (fourth clause;) three nieces receive absolute legacies of $7,000 each, (fifth clause;) one nephew receives a life-estate in $5,000, (seventh clause;) another, a life-estate in $2,000, (ninth clause;) and a niece a life-estate in $2,000, (eighth clause.)  By the second clause of the will the sum of $20,000 is bequeathed to one nephew, and the sum of $80,000 in equal shares to three nephews and two nieces of the testator, subject to certain life-interests in favor of the testator's sister Sarah and her husband.  By the third clause the sum of $7,000 apiece is bequeathed to two other nephews and two other nieces, subject, likewise, to a certain life-interest in behalf of the testator's sister Mary.  By the sixth clause the testator bequeaths to four other nephews the sum of $5,000 each, subject to a life-interest in favor of his sister Harriet.  The tenth clause is similar in its general form to the second, third, and sixth clauses, and is the first one in which the appellants Alice, Thomas, and Frederick Gray are mentioned.  The portion material to be considered on this appeal is in the following words:  "I give and bequeath unto Alice, Thomas, and Frederick, the three children of my deceased niece, Mary Jane Gray, late wife of the Rev. Thomas M. Gray, each the sum of $2,000: provided, always, nevertheless, and it is my will, that if my sister Jane Noe shall survive me, then, and in that case, at least one-half part, and more if she shall need or require it, of the interest or income of the legacies hereinbefore given to her said grandchildren, Alice, Thomas, and Frederick Gray, shall be paid by my executors, their survivors or survivor, to my sister Jane, or be applied to her use during the residue of the term of her natural life; and that the residue, if any, such interest or income of such legacies, respectively, to be paid to the said children of my deceased niece, Mary Jane Gray, to whom the principal thereof is hereinbefore given."  That part of the twelfth clause which we are called upon to construe is in the following words: "All the rest, residue, and remainder of my estates and property of every name, nature, and description, including the principal sums to be invested for the payment of interest or income thereof, unto my nephews James H. Cory and Samuel H. Clark, and my niece Sarah Jane Bradford, as they shall severally, by the death of either of them, fall into my said residuary estate, I do give and devise and bequeath unto my nephews and nieces hereinbefore named, except the said James H. Cory, Samuel H. Clark, and Sarah Jane Bradford, in such proportionate shares as the legacies hereinbefore given and bequeathed to them, respectively, shall bear to each other."  The question presented for decision is whether the devise and bequest "unto my nephews and nieces hereinbefore named" includes Alice Gray, the grand-niece of the testator, and Thomas and Frederick, grand-nephews, who are named in the tenth clause of the will, and therein described as "the three children of my deceased niece, Mary Jane Gray, late wife of the Rev. Thomas H. Gray."

The contention of the learned counsel for the appellants, in substance, is that from the whole scheme of the will it is apparent that the testator regarded

and intended to treat the three Gray children as representing in the mind of the testator their deceased mother, who was his niece; and that his purpose was to give them the proportionate share which, if she had been living, he would have given to her under the residuary clause. The argument is that if his niece Mary Jane Gray had been alive when he made his will he would have given her $6,000, instead of giving her children $2,000 each, as he does by the tenth clause; and, of course, if he had given this niece $6,000 or any other sum under that clause, she would be entitled to share proportionately in the residuary estate. As to this argument, it may be observed that, inasmuch as there appear to have been nephews and nieces of the testator who received nothing at all under his will, it can hardly be assumed with any certainty that Mrs. Gray would have been a legatee if she had been living at the time the will was made. Cases are by no means uncommon where gifts are given to children towards whose parents the donor is by no means friendly. We do not intend to intimate that such was the fact here, but mention it only to show how purely speculative seems the assumption that the appellants are to be regarded as the representatives of their mother as legatees under the tenth clause of the will. In order to hold with the appellants that the phrase "nephews and nieces hereinbefore named" includes the grand-nieces and grand-nephews, we should have to go further than any reported case to which we have been referred, or which we have been able to find has yet gone, in extending the meaning of the words "nephew" and "niece" beyond their ordinary and natural signification. Unquestionably these words, taken in the sense in which they are generally used, mean the children of a brother or sister. *Crook* v. *Whitley*, 7 De Gex, M. & G. 490, 494. Mr. Jarman, whose work on Wills may be said now to have reached the rank of a legal classic, says that great-nephews and great-nieces are not included in a gift to nephews and nieces, nor a great-grand-nephew, in a gift to grand-nephews. 2 Jarm. Wills, 152. In *Falkner* v. *Butler*, Amb. 514, which was decided in 1765, the master of the rolls (Sir THOMAS SEWELL) held that a testamentary power to a wife to appoint among nephews and nieces could not be extended to great-nephews and great-nieces. In the case of *Cromer* v. *Pinckney*, 3 Barb. Ch. 466, 475, Chancellor WALWORTH stated the general rule to be that the words "nephews" and "nieces," in their primary and ordinary sense, mean the immediate descendants of the brothers and sisters of the person named, and do not include grand-nephews and grand-nieces or more remote descendants. It is only where grand-nephews and grand-nieces have been classed by the testator in other parts of the will with his nephews and nieces that they have been held entitled to take under a gift to nieces and nephews. Thus in the case cited the testator excepted John Cromer by name, who was only a grand-nephew, from a class of nephews and nieces to whom he gave legacies of $500 apiece. He also gave a similar legacy to those whom he described as children of his nephew John Cromer; thus clearly showing, as the chancellor says, that "he did not intend to confine his bounty to the immediate descendants of his brothers and sisters in cases where such immediate descendants had died leaving issue." Another case to the same effect was decided by the vice-chancellor of England, in 1870, where the testator bequeathed the proceeds of the sale of an estate to his great-nephew, and to such others of his nephews as should be living at his own and his sister's decease, in equal parts. Here it was held that, inasmuch as one great-nephew was classed with the testator's nephews and nieces, his other great-nephews and great-nieces were entitled to share equally in the estate. *In re Blower's Trusts*, L. R. 11 Eq. 97. But in the case at bar the Gray children are nowhere referred to as great-nephews and nieces, nor are they anywhere classed with nephews and nieces in such a way as to indicate that by the use of the term "nephews and nieces" the testator intended to include the children of nephews and nieces. The will in *Lewis* v. *Fisher*, 2 Yeates, 196, closely resembled that in the

present case in its main features.    It bequeathed legacies to various nephews and nieces, naming them; and also legacies to the children of a deceased nephew, and of deceased nieces, naming such children.    By the residuary clause the rest of the estate was directed to be equally divided among the testator's nephews and nieces of every description, there being some of the half blood and some of the whole blood.    The court held that the term "nephews and nieces of every description" did not include great-nephews and great-nieces.    "All the nephews and nieces whom the testator has in view," said the plaintiff's counsel *arguendo*, "he particularly denominates as such in the whole of his will.    But, where he speaks of his great-nephews or great-nieces, he styles them the children of his nephews and nieces."    And the court declared their opinion clearly to be for the plaintiff, for the reasons given by his counsel.    In behalf of the appellant it is insisted that the Pennsylvania courts no longer follow this decision in *Lewis* v. *Fisher*, but an examination of the authorities cited does not show any departure from the principles upon which that decision was based.    A careful review of all the authorities to which we have been referred leads to the conclusion that the twelfth clause of this will was correctly construed by the surrogate.    While the general scheme of the will may be said to indicate a probability that the testator meant that the Gray children should share in the benefits of the residuary clause, it is nothing more than a probability, and we cannot say with any certainty that such was his intention.    It follows that the decree of the surrogate should be affirmed.    All concur in the result.