Detzel *v.* Nieberding, Exr., et al.

(No. 5496—Decided June 16, 1966.)

*Messrs. Simpson & Jacobs,* for plaintiff.
*Messrs. Nieberding & Nieberding,* for executor.
*Sister Frances Catherine,* for St. Joseph Infant Asylum.
*Mr. Edward J. Dempsey, Jr.,* for St. Rita School for the Deaf.
*Mr. Frank E. O'Gallagher,* for Mt. Saint Mary's Academy.

Davies, J. The evidence in this case discloses that Wilhelmina C. Guenther died testate on July 5, 1965. After making several specific bequests, she provided that the residue of her estate be converted into cash, that certain *contingent* monetary bequests be made to three brothers, a sister, Mary Detzel, a sister-in-law, a niece and a nephew, with a stipulation that the legatee "be living at the time of" the testatrix's death, and that the remainder of the residue be distributed in designated fractions to three named charitable institutions. The monetary be-

quest to Mary Detzel reads as follows: "To my beloved sister, Mary Detzel, provided she be living at the time of my death, the sum of Five Thousand Dollars ($5,000.00)." Mary's daughter and sole issue, Helen Detzel, survived her aunt, the testatrix. Mary Detzel predeceased her sister, Wilhelmina.

Helen Detzel has instituted the present action for a declaratory judgment to declare her right as the sole issue of Mary Detzel to take the $5,000.00 bequest made by the testratrix to Mary Detzel under the provisions of Section 2107.52, Revised Code, commonly known as the antilapse statute. The court has been asked to determine, under the provisions of this section, if Helen Detzel will take the $5,000.00 bequest devised to her deceased mother, Mary Detzel; if the bequest will lapse because "a different disposition" of the devise has been made by the testatrix in stipulating in her will that $5,000.00 be given to Mary Detzel "provided she be living at the time of my death"; or if this section has no application to this case.

We have not found any Ohio cases involving the applicability of the Ohio antilapse statute to the exact facts of this case. We have found a number of cases in other jurisdictions in which courts have held that devises or bequests containing provisions similar to the "Detzel" bequest do lapse despite the existence of antilapse statutes in those jurisdictions.

The court, in the case of *In re Schaertl's Will*, 138 N. Y. S. 2d 814, 207 Misc. 406, held that under a residuary clause of a will devising remainder of testatrix's estate to her brother and his heirs if he outlived her, the bequest to the brother, who predeceased the testatrix, lapsed and the residuary estate passed as intestate property because the words "if he outlives me" give evidence of a "contrary intent." In *In re Conay's Estate*, 121 N. Y. S. 2d 486, the court held that the antilapse statute did not apply in a case in which a testator left 25% of his interest in a business to his brother "if he is alive to enjoy it but if he dies before I do then let it pass as part of my residuary estate" because "the section is inapplicable where the testamentary instrument gives evidence of a contrary intent."

In the case of *In re Estate of Parker*, 181 N. Y. S. 2d 711, 15 Misc. 2d 162, the court considered the effect of an antilapse statute in a case in which the testator left one-fourth of the residue of his estate to his sister "if she survives me" but if she

does not survive me "I give said shares to her husband." The husband and his wife both predeceased the testator. The court held that under these circumstances children of the sister would not take under the antilapse section because the testator had "otherwise provided."

In *Kunkel* v. *Kunkel*, 267 Pa. 163, 110 A. 73, B. S. Kunkel died testate on October 1, 1911, leaving no lineal descendants, providing in his will that "I give to each of my brothers, Wm. F. Kunkel and Charles H. Kunkel, if living at the time of my decease, the sum of five thousand dollars." Wm. F. Kunkel died March 5, 1910, leaving an only child, Wm. B. Kunkel, surviving him. The Pennsylvania law provided that any devise or legacy in favor of a brother or sister, when a testator leaves no lineal descendants, "shall not be deemed or held to lapse" by reason of the decease of the devisee or legatee in the lifetime of the testator, if the former leaves issue surviving the latter, "saving always to every testator the right to direct otherwise." The court held that the testator did "direct otherwise" in providing that, in order to take, "the legatees must be living at the time of his decease; in other words, that the legacies, respectively, shall lapse if either of the brothers predecease him." The court (p. 167) said that "This is the plain meaning of the will, leaving no possible room for legal construction to the contrary." The court concluded that the legacy to Wm. F. Kunkel lapsed.

As a summation of the cases which hold that antilapse statutes do not apply to devises or legacies when words of survivorship are used in a will, we quote the following statement found in 92 A. L. R. 857, Section IXa: "Where the testator uses words of survivorship, indicating an intention that the legatee shall take the gift only if he outlives the testator, it is clear that the statute against lapses has no application. In such a case the condition attached to the gift fails immediately upon the death of the legatee, and there is nothing upon which the statute can operate. This result is so obvious as not to require citation of authority."

Analyses of the aforementioned cases show that the courts categorically concluded that antilapse statutes do not apply to devises made to relatives when the indicated words of survivorship were used in connection with the devises, because in such events the testators have expressed intentions to nullify the

provisions of the statutes. We, franky, do not agree with the conclusions of the courts that the words of survivorship used by testators in the aforementioned cases leave "no possible room for legal construction to the contrary" or are "so obvious as not to require citation of authority."

We must keep in mind that, in the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator. The words contained in a will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appears from the context that they were used by the testator in some secondary sense. All parts of the will must be construed together, and effect, if possible, given to every word contained in it. *Findley* v. *City of Conneaut*, 145 Ohio St. 48; *Townsend's Exrs.* v. *Townsend*, 25 Ohio St. 477; *Carter* v. *Reddish*, 32 Ohio St. 1; *Charch* v. *Charch, Exr.*, 57 Ohio St. 561; *Moon, Admr.*, v. *Stewart*, 87 Ohio St. 349; Addams & Hosford Ohio Probate Practice & Procedure, 5th Ed., p. 384, par. 4.

In the construction of statutes, the purpose in every instance is to ascertain and give effect to the legislative intent. *Carter* v. *City of Youngstown*, 146 Ohio St. 203. The primary purpose of the judiciary in the interpretation or construction of statutes is to give effect to the intention of the Legislature, as gathered from the provisions enacted, by the application of well settled rules of interpretation. *State, ex rel. Shaker Heights Public Library*, v. *Main*, 83 Ohio App. 415. The court must look to the statute itself to determine legislative intent, and if such intent is cearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged, or abridged. *Wachendorf* v. *Shaver*, 149 Ohio St. 231.

Section 2107.52, Revised Code, provides as follows: "When a devise of real or personal estate is made to a relative of a testator and such relative was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator, such issue shall take the estate devised as the devisee would have done if he had survived the testator. If the testator devised a residuary estate or the entire estate after debts, other legacies and devises, general or specific, or an interest less than a fee or absolute ownership to such devisee and relatives of the testator and such devisee leaves no issue, the estate devised

shall vest in such other devisees surviving the testator in such proportions as the testamentary share of each devisee in the devised property bears to the total of the shares of all of the surviving devisees, unless a different disposition is made or required by the will.''

When the One Hundredth General Assembly enacted the Revised Code of Ohio, which became effective on October 1, 1953, it specifically provided in Section 1.24, Revised Code, as follows: ''That in enacting this act it is the intent of the General Assembly not to change the law as heretofore expressed by the section or sections of the General Code in effect on the date of enactment of this act. The provisions of the Revised Code relating to the corresponding section or sections of the General Code shall be construed as restatements of and substituted in a continuing way for applicable existing statutory provisions, and not as new enactments.''

Section 10504-73, General Code (formerly Section 10581, General Code, and earlier Section 5971, Revised Statutes), which, on October 1, 1953 was enacted into Section 2107.52, Revised Code, reads as follows: ''When a devise of real or personal estate is made to a child or other relative of the testator, if such child or other relative was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator, in either case such issue shall take the estate devised as the devisee would have done, if he had survived the testator. If such devisee leaves no issue and the devise be of a residuary estate or of the entire estate after (a) debts, (b) other legacies and devises, general or specific, (c) a life estate, or (d) any other interest less than a fee or absolute ownership, to such devisee and one or more children or relatives of the testator, the estate devised shall pass to and vest in such other devisee or devisees surviving the testator in such proportions as the testamentary share of each devisee in the devised property bears to the total of the shares of all of the surviving devisees, unless a different disposition be made or required by the will.''

The presumption is that the testatrix knew of a statute providing against lapsing of devises and that if she survived her husband, his heirs, at her death, would take property she devised to him unless she manifested a contrary intent in her will. *In re Finch's Estate*, 239 Iowa 1069, 32 N. W. 2d 819. All doubts

are to be resolved in favor of the operation of the antilapse statute, and an alleged adverse intention, within proviso that the statute does not apply if the testator has otherwise directed in regard to the children or descendants of the deceased devisee or legatee, must be made to appear with a reasonable degree of certainty. *Henney* v. *Ertl*, 7 N. J. Super. 401, 71 A. 2d 546. A section of the Probate Code providing that the death of the devisee or legatee related to testator before testator shall not defeat devise if devisee leaves lineal descendants who survive testator must be read into the will. *In re Esposito's Estate,* 57 Cal. App. 2d 859, 135 P. 2d 167. The court must read into a will statute governing disposition of property where devisee or legatee dies before testator. *In re Pew's Estate,* 10 Cal. App. 2d 41, 50 P. 2d 1045.

Antilapse statutes are remedial and should receive a liberal construction. The testator is presumed to know the law, and it will be presumed that his will was drawn with knowledge of liberal construction to be accorded antilapse statute. Under a statute providing that a devise to a devisee who predeceases testator fails unless an intention appears to substitute another in his place, and, except when certain other circumstances exist, intention of testator controls, but to render statute inoperative contrary intent of testator must be plainly indicated. *In re Steidl's Estate,* 89 Cal. App. 2d 488, 201 P. 2d 58. Testatrix is presumed to have framed her will with statutory regulations against lapsed gifts in mind. *In re Force's Estate,* 23 N. J. Misc. 141, 42 A. 2d 302. Testator who was predeceased by sole devisee under will was presumed to have made will in view of lapse statute and to have intended that statute should apply, and burden of showing contrary intent was upon those asserting it. *Vance* v. *Johnson,* 171 Md. 435, 188 A. 805. The presumption exists that a testator in drawing his will possesses knowledge of existing statutes which may affect the devolution of his estate. *Flynn* v. *Bredbeck,* 147 Ohio St. 49.

It will be noted that Section 2107.52, Revised Code, formerly Section 10504-73, General Code, Section 10581, General Code, and Section 5971, Revised Statutes, provides that when a devise is made to a relative of a testator and such relative was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator, such issue shall take the estate devised as

the devisee would have done if he had survived the testator. The second part of each statute provides generally that if the testator devised a residuary estate—to such devisee and relatives of the testator and such devisee *leaves no issue,* the estate devised shall vest in such other devisees surviving the testator in such proportions as the testamentary share of each devisee in the devised property bears to the total of the shares of all of the surviving devisees, *unless a different disposition is made or required by the will.* The stipulation *unless a different disposition is made or required by the will,* found in the second part of the statutes, refers only to a case in which a devise is made to a relative of a testator who was dead at the time the will was made or dies thereafter, leaving no issue surviving the testator, and does not refer to the first part of the sections when a devise is made to a relative of the testator who was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator. While really immaterial, when, therefore, Ohio courts in considering the applicability of Ohio antilapse statutes state that such statutes apply when a devise is made to a relative devisee who dies leaving issue surviving the testator *unless the testator makes a different disposition of his property,* they are not referring to the language found in the statutes, but are referring to the general law which holds that the intention of the testator governs in the construction of a will.

To avoid application of antilapse provision, it must clearly appear from the will, and circumstances disclosed thereby, that it was the intention of the testator, at the time he made his will, to make provision for contingency of death of one or more of his children during his lifetime. *Vollmer* v. *McGowan,* 409 Ill. 306, 99 N. E. 2d 337.

The Supreme Court of Ohio, in *Woolley* v. *Paxson,* 46 Ohio St. 307, in 1889, considered the purpose and application of Ohio's antilapse statute, then Section 5971, Revised Statutes, which provided that ''When a devise of real or personal estate is made to any child or other relative of the testator, if such child or other relative shall have been dead at the time of the making of the will, or shall die thereafter, leaving issue surviving the testator, in either case such issue shall take the estate devised in the same manner as the devisee would have done, if he had survived the testator; or if such devisee shall leave no

such issue, and the devise be of a residuary estate to him or her, and other child or relative of the testator, the estate devised shall pass to, and vest in such residuary devisee surviving the testator, unless a different disposition shall be made or required by the will.'' Aaron Paxson, who made his will in 1868 and died in 1884, devised all of his estate to his wife for life and, after making certain provisions, directed his executors on the death of his wife to divide his estate into four equal parts, one part to his daughter Julia, ''if she be living, or to her heirs if she be dead at the time the same is ready to be paid,'' and one part on the same terms to his daughter Ivey, one part to be invested in land and conveyed to his son Ezeriah ''for the term of his natural life and to his children in fee simple afterwards,'' and one part to be invested in land and conveyed to his son Isaac ''for the term of his natural life afterwards to his children in fee simple.'' When Aaron made his will his son Isaac was alive and had four living children, James, Michael, Almira, and Nancy. The wife of the testator, Isaac, Almira, and Nancy died before Aaron, both Almira and Nancy having died intestate, Almira being survived by Pearl, her sole issue, and Nancy being survived by Euphemia and Maggie, her only issue. Pearl Euphemia, and Maggie all survived their great grandfather Aaron. James and Michael, who also survived their grandfather, Aaron, claim that as the surviving children of their father, Isaac, they are entitled to the entire devise made to Isaac. On the other hand it was claimed that the issue of Almira and Nancy each take the share which their mother would have taken, under the devise to the children of Isaac.

The court first outlined the purpose of the antilapse statute in the following language (p. 314): ''The rule as to the lapsing of devises and legacies that prevailed before the statute, defeated, in most cases, the intention of the testator. He generally made his will with reference to the objects of his bounty as they existed at the time and as though his will took effect at the date of its execution—not apprehending that a lapse would occur in case any of them should die before himself, unless some express disposition should be made in anticipation of such event. The statute was passed to remedy such disappointments, and should receive a liberal construction, so as to advance the remedy and suppress the mischief. It among other things provides

that where a devise is made to a child or other relative of the testator, who dies before the testator, the issue of such object of his bounty shall take the portion devised to such child or relative. Nothing is more just and conformable to the probable intention of the testator in every instance. The fact that the child or relative is not mentioned by name should not defeat the application of the statute, where the language applied to the facts, as they were at the execution of the will, designates a child or relative as an object of the testator's bounty, with as much certainty as if it were mentioned by name."

The court (p. 315) said that the purpose of the statute was "to make a new disposition by law of such (lapsed) legacy, where the testator had himself failed to do so, in anticipation of the possible death of any one of the chosen objects of his bounty before himself, where such object was a child or other relative of his. Hence the only question that can arise in the construction of a will under this statute is, whether it, as a matter of fact, contains a devise of real or personal estate to a child or other relative of the testator, which such devisee would have taken had he survived the testator; if so, then by the express language of the statute, the issue of such devisee surviving the testator 'shall take the estate devised in the same manner as the devisee would have done if he had survived the testator,' unless a different disposition shall be made or required by the will."

The court held that under a devise to a class each member who survives the testator, would, independent of the statute, take an aliquot part of the devise as a tenant in common with the other survivors, therefore, under Section 5971, Revised Statutes, the issue of a deceased member of the class surviving the testator, must take what the deceased would have taken had he survived. The court pointed out that "our statute is general in terms; it is not limited to vested devises only, but applies to any 'devise of real or personal estate to a child or relative of the testator;' and, whether vested or contingent, it is declared, that where such devisee predeceases the testator, the surviving issue of such deceased devisee 'shall take the estate devised *in the same manner* as the devisee would have done if he had survived the testator.' " It was argued on behalf of James and Michael that the devise to the children of Isaac was a contingent

one, that is to say, it depended not only upon their surviving the testator, but also the wife of the testator, to whom was given a life estate in the whole property, and to the determination of which estate the gift to the father for life as well as the remainder to the children was postponed. The court concluded that, *since the statute applied to contingent gifts as well as to vested ones,* the great grandchildren, Pearl, Euphemia, and Maggie, the surviving issue of the two daughters of Isaac took the devise to Isaac's children, which the deceased mother would have taken, had she survived the testator.

In another important case, *Larwill's Exrs.* v. *Ewing,* 73 Ohio St. 177, John C. Larwill in his will and a codicil thereto made certain specific bequests to relatives, including a bequest of $50,000 to his sister, Elizabeth L. Miller, and disposed of the residue of his estate giving a specific proportion thereof to his said sister. The codicil concludes as follows: ''I am not unmindful of the fact I have omitted from my will all mention of several relatives of mine. This omission is not accidental or inadvertent or from any unkind feeling on my part, but deliberate and determined, and for reasons which seem to me good and sufficient. I have decided to exclude from any participation in my estate any and all persons not mentioned in this my will and codicil.'' Mrs. Miller predeceased the testator leaving surviving her and the testator Mrs. Ewing, her daughter, as her only issue and heir at law. The court (p. 181) stated: ''Stability and consistency of adjudication require the conclusive presumption that the gift was made with knowledge of the statute.'' (Section 5971, Revised Statutes, which became effective March 20, 1866) ''and its effect. * * * The concluding phrase of the section of the statute, 'unless a different disposition shall be made or required by the will' forbids such application of these provisions as would defeat the declared intention of the testator. Applied to the case the statute provides that Mrs. Ewing shall take the bequest by substitution unless the testator has made another disposition of the bequest contingent upon the death of the primary legatee before his own death, or has by apt terms so limited the bequest to the primary legatee as to prevent the operation of the statute. Neither in the will nor in the codicil is any disposition made of the subject of the bequest upon the contingency of the death of Mrs. Miller before the death of the testa-

tor. The terms employed to limit or qualify a gift already made must, to be effective, be as clear and significant as those in which it was made." The court (p. 182) concluded that "the present case depends upon the effect to be given to an important section of the statute which is not to be averted except by language which clearly makes or requires a disposition different from that which its terms contemplate." The court held that, under the terms of the statute, Mrs. Ewing was entitled to the bequests made to her mother, Mrs. Miller.

In *Estate of Pfadenhauer*, 159 Cal. App. 2d 686, 324 P. 2d 693, where testatrix left the bulk of her estate to two sisters and to the two daughters of one of the sisters and provided in her will that none of her relatives other than those specified in the will were to receive anything from her estate, and where both of the named sisters predeceased testatrix, the court held that "the antilapse statute (Prob. Code, Section 92) should be read as part of the will and the lineal descendants of the sister whose children were not named were entitled to that sister's share, since the clause in question showed an intention that the gifts to the named relatives were not to be interfered with by the claim of any unnamed relative and the fact that no attempt was made to provide for a substitute in the event one of the named devisees or legatees predeceased testatrix indicated an intention not to provide against the operation of the antilapse statute. * * *." The court (p. 688) stated: "It clearly appears that this testatrix intended to dispose of her entire estate and that she did not intend intestacy as to any part of it. Although she attempted to dispose of all of her estate by specific gifts she did not provide for any substitute in the event any such devisee or legatee should die during her lifetime. * * *. Although this testatrix could have provided against the operation of this statute (Section 92 of the Probate Code) * * * she did not expressly do so, and the language of her will does not indicate such an intention." The court further reasoned (p. 689) that "Instead of disclosing an intention to provide against the operation of Section 92, the clause in question indicates an intention merely to provide that no claim by one of these unnamed relatives should be allowed to interfere with the specific gifts to the named relatives which she had expressly made. While the intention clearly

appears that these gifts were not to be interfered with by the claim of any unnamed relative, the very fact that she made no attempt to provide for a substitute in the event one of the named devisees or legatees predeceased her indicates an intention not to provide against the operation of Section 92, rather than the contrary. Her expressed intention to exclude relatives claiming in opposition to the gifts made in the will in no way indicates an undisclosed intention to exclude the lineal descendants of a named devisee or legatee who might not be living at the time of her own death. It would be unreasonable to interpret the expressed wish that none of her unnamed relatives receive anything from her estate as meaning that such a person should never receive any of her property, under any circumstances. * * *'' The court concluded that the testatrix clearly intended to dispose of all of her estate, and it seemed equally clear that she intended to exclude her unnamed relatives merely as heirs at law and not as lineal descendants of one of the devisees or legatees to whom she had made a specific gift.

In determining whether Wilhelmina C. Guenther intended the devise made to her sister to lapse or to be distributed to her niece, Helen, under the provisions of Section 2107.52, Revised Code, we must be guided, as shown in the cases which have been discussed, by the following well established rules of construction: (1) The sole purpose of the court is to ascertain and carry out the intention of the testator. (2) In the construction of statutes, the purpose in every instance is to ascertain and give effect to the legislative intent. (3) The court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, or abridged. (4) The antilapse statutes were enacted to prevent lapsing when a devise is made to a relative who predeceases the testator but has issue who survive the testator. (5) Antilapse, as other, statutes are are remedial and should receive a liberal construction. (6) The presumption exists that a testator in drawing his will possesses knowledge of existing statutes which may affect the devolution of his estate. (7) The testator is presumed to know the law, and it will be presumed that his will was drawn with knowledge of the liberal construction to be accorded the antilapse statute.

(8) To render the antilapse statute inoperative a contrary intent of the testator must be plainly indicated. (9) The antilapse statute is not limited to vested devises, but applies also to contingent devises. (10) It must be presumed that, unless otherwise provided, a testator intended to dispose of his whole estate, and it is a settled rule that a testator is never presumed to intend to die intestate as to any part of his property. (For further citations, see Ohio cases digested in 56 Ohio Jurisprudence 2d, Wills, Section 575).

It must be conclusively presumed that the devise to Mary Detzel in Wilhelmina C. Guenther's will was made with knowledge of the Ohio antilapse statute and its effect. Actually, Wilhelmina did make the devise to her sister, Mary, under the exact provisions contemplated by Section 2107.52, Revised Code. Wilhelmina did devise "to my beloved sister, Mary Detzel, provided she be living at the time of my death, the sum of Five Thousand Dollars * * *." The statute, as applied to this devise, provides that if a devise is made to a relative of the testator and such relative dies thereafter leaving issue surviving the testator such issue shall take the estate devised as the devisee would have done if he had survived the testator. In making a *conditional* devise to her sister, Mary, *"provided she be living at the time of my death,"* Wilhelmina was, in fact, expressing the same intention which the statute provides for if she had made the devise with the following contingency: "I devise to my sister, Mary, the sum of $5,000.00, unless she dies before me." Certainly a devise to my sister *provided she be living at the time of my death* means the same, expressed conversely, as a devise to my sister *provided she does not die before me.* To prevent operation of the Ohio antilapse statute when a devise is made to a relative conditioned upon the survival of the testator by the relative, and the relative predeceases the testator leaving issue who survive the testator, it is necessary that the testator, in apt language, make an alternative provision in his will providing that in the event such relative predeceases or fails to survive the testator such devise shall be given to another specifically named or identifiable devisee or devisees.

Since the testatrix, Wilhelmina, made a devise to her sister, Mary, who predeceased the testatrix leaving issue, Helen, surviving the testatrix, and the testatrix did not make by apt lan-

guage a different disposition of her property under such contingency to prevent the operation of Section 2107.52, Revised Code, Helen will take the $5,000 devised to her deceased mother by substitution under the provisions of said statute.

*Judgment accordingly.*