SHALKHAUSER, EXR., *v.* BEACH.

(No. 712592—Decided February 5, 1968.)

Probate Court of Cuyahoga County.

*Mr. John H. Bever,* for Herbert E. Shalkhauser, executor.

*Messrs. Squire, Sanders & Dempsey,* and *Mr. Frank M. Rasmussen,* for defendants, John H. Beach, Gertrude Beach Cleary, Roberta Beach Palmer and Virginia Beach Peck.

*Messrs. Rosenthal, Roesch, Buckman & McLandrich,* and *Mr. Bobb Hugo Hardies,* for defendants, Courtland Horr, Arthur W. Sprague and Imogene Bliss.

DECATUR, General Referee. This cause concerns the construction of the will of Noble D. Hepburn, deceased, and in particular, Item III (c) of that will. Noble D. Hepburn died August 18, 1965, his will was admitted to probate April 20, 1966, by the Probate Court of Cuyahoga County. Item III (c) of said will provides as follows:

(c) Thirty percent (30%) equally among the following who survive me, namely: my father's brother's grandson, John H. Beach, and his brothers and sisters, and the nieces and nephews of my deceased mother whose name was Kathline C. Johnston Hepburn.

It is alleged that the deceased mother of Noble D. Hepburn had one nephew, Harry A. Bliss, who predeceased the testator by twenty-eight years, and one niece, Marie Louise Horr, who predeceased the testator by eight years.

Harry A. Bliss, deceased nephew of the testator's mother, left one daughter surviving him, Imogene Bliss. Marie Louise Horr, deceased niece of testator's mother, left two children surviving her, Courtland Horr and Louise B. Sprague. All three of the above great-nephews and great-nieces survived the testator.

The defendants, Courtland Horr, Imogene Bliss, and Arthur W. Sprague, assignee of the interest held by Louise B. Sprague, contend first that Section 2107.52, Revised Code, commonly known as the "Anti-Lapse Statute," applies so as to substitute the defendants, Imogene Bliss, Courtland Horr, and Arthur W. Sprague, children of deceased nephews and nieces of testator's deceased mother, in the place of their deceased parents.

Second, petitioner asks whether the language in Item III (c) "and the nieces and nephews of my deceased mother whose name was Kathline C. Johnson Hepburn" encompasses a grand-nephew and two grand-nieces of the testator's deceased mother, since no nieces and nephews of Kathline C. Johnson Hepburn were alive at testator's decease or at the time of the execution of the will.

Does the Anti-Lapse Statute apply?

The Anti-Lapse Statute, Section 2107.52, Revised Code, in essence, provides that if by will, a devise or bequest is made to a relative of the testator, and that relative was either dead at the time the will was executed or died thereafter, leaving issue which survive the testator, those issue shall take the share their deceased parent would have taken. The statute ends, after providing for a lapse in the residue, with the phrase: "unless a different disposition is made or required by the will."

It could be contended that the above-quoted phrase applies only to the second sentence of the statute of which it is a part, and that therefore where a devisee or legatee dies leaving issue surviving the testator, the statute applies irrespective of the intent of the testator.

Such a contention is unsound.

At common law a bequest to a person already dead was invalid and of no effect. Property so devised or bequeathed passed to the residuary beneficiaries. In the same fashion a bequest or devise to one who predeceased the testator, though living at the execution of the will, lapsed and fell into the residue for distribution. And a lapse in the residue at common law passed to the heirs and next of kin of the testator as intestate property, i. e., property undisposed of by will.

To avoid the harsh results of the common law when a testator clearly intended to distribute his property among his heirs and next of kin, the Legislature passed Section 2107.52, Revised Code. The statute is clearly remedial in nature avoiding the arbitrariness of the common-law rule and assuring that a testator's probable intent will be followed.

Any contention that the Anti-Lapse Statute cannot be avoided by will is answered by considering that the obvious

intent of the Legislature in enacting the statute was to eliminate an arbitrary and unreasonable common-law rule. It is, therefore, unrealistic to assume that in correcting an arbitrary and inflexible rule to comport itself more closely with the probable intent of a testator the Legislature would provide an equally harsh, arbitrary, and inflexible rule by eliminating any right to avoid the new provision by appropriate manifestations of testamentary intent.

The interpretation is supported by Robert C. Bensing in his excellent article on the Ohio Anti-Lapse Statute. See Bensing, The Ohio Anti-Lapse Statute, 28 U. Cincinnati L. Rev. 1, 29 (1959). And by many judicial pronouncements. *Larwill's Executors* v. *Ewing* (1905), 73 Ohio St. 177; *Wooley* v. *Paxson* (1889), 46 Ohio St. 307; *Kelly* v. *Talifer* (App. 1940), 31 Ohio Law Abs. 602; *Jackson* v. *Shinnick* (1886), 3 Ohio N. P. 211.

As it is apparent that the statute may be avoided by a sufficient expression of intent, what language constitutes an expression of contrary intent as will avoid the application of the statute?

Words of survivorship are usually sufficient to indicate an intent that the statute not apply. In *Jackson* v. *Shinnick* (1886), 3 Ohio N. P. 211, the court, in construing a device to the testator's daughter and grandchildren limited as follows:

"If at the time of my death, my daughter or any grandchild now living shall have died * * * estate shall go to the survivors share and share alike * * *" considered the provision sufficient to avoid the statute, the ultimate determination, however, was based upon the construction of the above will provision and a codicil which did not contain any survivorship limitations.

In *Kelly* v. *Talifer* (App. 1940), 31 Ohio Law Abs. 602, a devise reading: "Any and all other property of which I may be seized is to be divided equally among my surviving children," was questioned. The court held that the words of survivorship were sufficient to avoid the application of the statute.

Further support for this interpretation of the Anti-

Lapse Statute is found in the statement of the general rule:

"Pursuant to the general rule that the application of anti-lapse statutes may be controlled by the expressed intent of the testator, it has been held * * * that a contrary result may be reached where the testator used specific language making a disposition of the property inconsistent with that which would be reached under the anti-lapse statute." Annot. 63 A. L. R. 2d 948, 956 (1959).

And further:

"Where the testator uses words of survivorship indicating an intention that the legatee shall take the gift only if he outlives the testator it is clear that the statute against lapses has no application." Annot. 63 A. L. R. 2d 1172, 1186 (1959), see, also, 56 Ohio Jurisprudence 2d, Wills, Section 857 (1958).

Considering the provision of the Noble Hepburn will, at issue in the instant litigation, i. e., "Thirty percent (30%) equally among the following who survive me * * *" it should be obvious that the survivorship limitation is effective to avoid the application of the Anti-Lapse Statute. See Williams v. Williams (1942), 152 Fla. 255, 9 So. 2d 798; Re Gerdes' Estate (1954), 245 Iowa 778, 62 N. W. 2d 777; Re La Prejato's Will (1956), 3 Misc. 2d 936, 1155 N. Y. S. 2d 569; Re Conoy's Estate (Surr. 1953), 121 N. Y. S. 2d 486; Re Harris' Will (1930), 138 Misc. 287, 245 N. Y. S. 570.

Defendants cite the case of Gale v. Keyes (1933), 45 Ohio App. 186, as being closest in point. It is the opinion of this referee that the case cited is most definitely not in point as the court therein held that the testator intended to benefit those living at the time of the execution of the will and not those living on the date of his death, as is the situation in the instant case.

For the proposition that words of survivorship are insufficient to avoid the application of the Anti-Lapse Statute, defendants cite Detzel v. Nieberding (Prob. 1966), 7 Ohio Misc. 262. The Hamilton County Probate Court held that the words "provided she be living at the time of my death" were insufficient to avoid the statute.

However, defendants ignore the excellent opinion of Fletcher R. Andrews, Chief Referee of this court, in *Day* v. *Brooks* (Prob. 1967), 10 Ohio Misc. 273, wherein he held that the phrase "who shall be living at the time of my decease" was clearly sufficient to avoid the statute. Mr. Andrews, in mentioning *Detzel* v. *Nieberding, supra,* noted briefly that it was distinguishable on its facts but decided to avoid expressing any opinion on it. It is this referee's opinion that not only is *Detzel* v. *Nieberding, supra,* distinguishable, but it is also clearly and completely erroneous.

Do the words "nieces and nephews" mean "grandnieces and grandnephews"?

As a general proposition "nieces and nephews" in their primary technical sense, import a consanguineous relationship and by modern usage mean the sons or daughters of a brother or sister. *Ayers* v. *Public Service Coord. Transp.,* 16 N. J. Misc. 60, 196 Atl. 466. *Accord. Fedi* v. *Ryan,* 118 N. J. L. 516, 193 Atl. 801, 802, 803; *Schoen* v. *Siegmund,* 119 N. J. Equity 524, 183 Atl. 292, 294; *In re Hunt's Estate,* 53 Hun. 466, N. Y. S. 186, 188; *Cromer* v. *Pinckney,* 3 Barb. Ch. 460, 475 (N. Y.); *In re Roots Estate,* 187 Pa. 118, 40 Atl. 818, 819.

Further, there is also a presumption that the words used in a will are intended to be taken in their ordinary and primary sense and meaning. *Everhard* v. *Brown* (1945), 75 Ohio App. 451.

The *Everhard case, supra,* is directly in point. The testator left his estate to his wife for life and then to "the nephews, nieces, grandnephews, and grandnieces of myself, and the nephews, nieces, grandnephews, and grandnieces of my wife * * * share and share alike * * *." A grandniece of the testator's wife predeceased the testator leaving issue surviving the testator. The court held that where the terms used forbid interpretation by reason of their clarity, a court cannot change them and therefore a great grandniece was not included.

However, most authorities do recognize a modification of the general rule, or rather state that the rule mentioned above is not complete, and should read:

"Nephews and nieces as used in a will, applies as well to grandnephews and grandnieces as to the children of brothers and sisters of the testator if an intention that the words shall have such intended application is apparent from the instrument." *Shepard* v. *Shepard*, 57 Conn. 24, 17 Atl. 173, 174.

See also *Benton* v. *Benton*, 66 N. H. 169, 20 Atl. 365; *Cromer* v. *Pinckney*, 3 Barb. Ch. 466, 474 (N. Y.). *In re Van Riempst* (1917), 99 Misc. 169, 165 N. Y. S. 538, 539.

Perhaps the best statement of the rule is found in Restatement, Property, Section 285 (1940).

"(1) When a limitation is in favor of the 'children' of a designated person, all descendants of such person more remote than those of the first generation are excluded from the possible takers thereunder except when (a) a contrary intent of the conveyor is found from additional language or circumstances; * * *

"(2) The following are the more frequently encountered factors tending to establish the existence of the 'contrary intent of the conveyor,' referred to in Subsection (1), Clause (a):

"(a) the conveyor, at the time of the execution of the instrument containing the limitation, knows that *the only possible takers thereunder are descendants of such person more remote than those of* the first generation"; * * * (Emphasis added).

It is uncontroverted that the only nephews and nieces of Noble D. Hepburn had died prior to the execution of the will in question; one twenty-eight years prior to its execution, the other eight years prior to its execution.

Considering these facts and the survivorship limitations contained in Item III (c) of testator's will, it becomes apparent that the will is inconsistent were the natural meaning of the words "nephews and nieces" accepted. It is completely illogical to bequeath a portion of one's residuary estate to persons long dead and then condition their right to acquire that interest upon their surviving the testator.

*Everhard* v. *Brown* (1945), 75 Ohio App. 451, is distinguishable since in that case there were legatees surviv-

ing the testator who could take under the bequest, and in addition there were no inconsistent and illogical limitations placed upon their right to receive the bequest.

Perhaps closest in point among the Ohio authorities is *Bartels* v. *Bartels* (Prob. 1956), 75 Ohio Law Abs. 117. A bequest was made to nieces and nephews by name. Sarah Duckworth was to receive $200.00. The only Sarah Duckworth who was a niece of the testatrix had predeceased the testatrix and was also dead at the time the will was executed. However, the testatrix did have a grandniece with the same name. The court held that since bequests were also made to other grandnieces in the same provision, that since other relationships were misstated, and that since the testatrix was aware of the death of her niece, the legatee was intended to be Sarah Duckworth, the grandniece of the testatrix. See *Haywood* v. *Barker* (1889), 113 N. Y. 366, 21 N. E. 142; *Leask* v. *Richards* (1906), 116 App. Div. 274, 101 N. Y. S. 652, aff'd. 188 N. Y. 291, 80 N. E. 919 (1907); *Bank of New York* v. *Shillito* (1939), 14 N. Y. S. 2d 458, 466-67.

The case of *Kittson's Estate* (1929), 177 Minn. 469, 235 N. W. 439, is factually almost identical with the instant case.

The testator died in 1927 leaving a will executed in 1923. The residue of his estate was to go to his brothers and sisters and the children of his two deceased brothers if they survive the testator. In 1918 one of his nephews, a child of a deceased brother, died leaving two children, testator's grandnephews.

The court stated that an ambiguity arises when the situation at the time of execution is considered. The testator is considered to have known the objects of his bounty, and also that his nephew had died five years before the will was executed. Therefore, if the testator only intended to benefit his remaining nephew there was no need to use collective words when only one person was to benefit, and no reason for a class gift. Thus the court held that due to the inconsistent language, the testator must have intended that the children of his deceased nephew, the testator's grandnephews, were the actual legatees.

On the basis of this and the above mentioned authori-

ties, this referee is of the opinion that Noble D. Hepburn, in making the bequest of part of his residuary estate to the nieces and nephews of his deceased mother, actually intended that the bequest go to the grandnieces and grandnephews of his deceased mother.

It should be noted that Item III (c) of the Will of Noble D. Hepburn actually bequeathed the thirty percent equally to the nephews and nieces of the testator's deceased mother, and John H. Beach and his brothers and sisters, the testator's father's brother's grandchilren. With some intense reflection it can be determined that one's father's brother's grandchildren are actually the grandnephews and grandnieces of the testator's father. As it has already been determined that the testator meant also to benefit the grandnephews and grandnieces of his mother, that determination is supported by the fact that the remainder of that portion of the residue is to go to persons of an equal degree of consanguinity.

CONCLUSIONS

1. The Anti-Lapse Statute, Section 2107.52, Revised Code, does not apply to Item III (c) of decedent's will.

2. The testator meant "grandnephews and grandnieces" when in Item III (c) of decedent's Will he referred to "nieces and nephews."

Journal entry to be prepared accordingly.