Burford ROYSTON, Respondent,

v.

Wendell W. WATTS, et al., Defendants,

J.W. Ballew, et al., Appellants.

No. WD 46049.

Missouri Court of Appeals,
Western District.

Nov. 3, 1992.

Rehearing Denied Dec. 22, 1992.

Willard B. Bunch, Kansas City, for appellants.

W.F. Daniels, Fayette, for respondent.

Before LOWENSTEIN, C.J., and BERREY and BRECKENRIDGE, JJ.

LOWENSTEIN, Chief Judge.

This is a court tried matter on uncontested facts that seeks to determine via a partition of real estate, precisely whether the Anti–Lapse statute, § 474.460, RSMo.1986, applies to a will. In the will, certain legatees whose ancestor, also a legatee in the residuary estate, but who predeceased the testator, received specific shares in the residuary estate. Simplified, the main issue presented in this case is whether a specific residuary legacy keeps the legatee from also taking the share of an ancestor who died before the testator? The anti-lapse statute reads:

> When any estate is devised to any child, grandchild or other relative of the testator, and the devisee dies before the testator, or is treated as if he predeceased the testator, leaving lineal descendants who survive the testator by one hundred twenty hours, the descendants shall take the estate, real or personal, as the devisee would have done if he had survived the testator by one hundred twenty hours.

Section 474.460 RSMo.

■ In essence, the purpose of this statute is to counteract the common law rule that a bequest lapses if the legatee does not survive the testator. *McComb v. Lyons*, 487 S.W.2d 16, 18 (Mo.1972); *Taylor v. Coe*, 675 S.W.2d 148, 150 (Mo.App. 1984). For the statute to prevent the lapse of a devise or a bequest under a will, the requirements are clear—1) the devise must be to a child, grandchild, or other relative by consanguinity, *In re Knighten's Estate*, 344 Mo. 246, 125 S.W.2d 863, 864 (1939); *Estate of McReynolds v. Heirs*, 800 S.W.2d 798, 800 (Mo.App.1990); and, 2) that devisee must leave lineal descendants. *Zombro v. Moffett*, 44 S.W.2d 149, 153 (Mo.1931).

*Facts on Appeal*

This case presents the court with the difficulties of ascertaining the facts and deciding this appeal because the parties did not stipulate the facts to a rather complex ownership of two pieces of real estate. Rather, the record consists of but a petition and answer, which does not make for an easy grasp of the facts. No findings or conclusions were requested or filed. *Ludlow v. Ahrens*, 812 S.W.2d 245, 248 (Mo. App.1991). Denominated as an Appendix, a rudimentary chart at the end of this opinion may aid the reader. Much of this opinion will merely paraphrase the facts and contentions on appeal since the briefs and arguments are unclear.

The respondent, Burford Royston, one of the legatees under the will of the testator, Clede Ballew, brought this suit for partition. The appellants are the lineal descendants of Merle Ballew (who died prior to the testator). At stake are two pieces of real estate, one of which the testator owned outright and the other in which he held a ¼ fractional share.

The testator in a 1976 will left his residuary estate as follows: Merle C. Ballew, ⅐ thereof; Theo Powell, ⅐ thereof; Mr. and Mrs. Aubrey Quinley, ⅐ thereof; Marvin Watts, ⅐ thereof; Mr. and Mrs. Burford Royston, ⅐ thereof; Richard

Wayne Royston, 1/7 thereof; Thomas Reece 1/14 thereof; Wendell Watts, 1/14 thereof.

By a 1979 codicil, Clede reduced Wendell Watts to a 1/28 share, deleted Thomas Reece, and added 1/28 shares each to Merlee Bateman, J.W. Ballew and Sara Overstreet, who are the descendants of Merle Ballew. The record does not show when Merle died, only that he predeceased the testator who died June 8, 1990. Also, the record is silent on whether Merle was a relative by blood of the testator, thus satisfying the first prong of the anti-lapse statute. This court will address this question later in the opinion. The record does show Marvin Watts and Theo Powell died before the testator and Mrs. Quinley survived him for little more than a month.

The parties agree that partition of the property provides the only remedy. To divide the property, this court needs to determine the percentage or share under the residuary clause each legatee takes of the money brought in by the partition sale. The only question regarding the percentages is the ultimate share Merle's descendants take—whether this court should limit their share to a 1/28th, or should they share in the 1/7th legacy of their ancestor Merle, plus take the 1/28 share of the swelled residuary created by the lapse or failed devises to Marvin Watts and Theo Powell? [1]

The respondent Royston convinced the trial court to limit the appellants' share to the 1/28th share under the codicil. The trial court did not let the appellants share in the Powell or Watts increase to the pot, § 474.-465.2 RSMo., or share in Merle's portion under the anti-lapse statutory provision of § 474.460 RSMo.

Under the standard of review, the judgment of division of proceeds is examined as to construction and application of the law. *Fischer v. Mills*, 248 Iowa 1319, 85 N.W.2d 533, 535 (1957). This court will examine the percentage share of each of the parties as to the tract owned outright by the testator. Examination consists of answering these two questions: 1) does a specific legacy to a person of a portion of the residuary estate, where the legatee was also a relative of another predeceased residuary legatee, show an intent to thwart the result of the anti-lapse statute and pass on only the specific devise; and, 2) in such a case, if the statute is not deemed overcome by the courts, does the legatee also share in the swelled residuary estate created by the lapse to other legatees for whom the statute did not save?

## Discussion

■ As pointed out earlier, the record this court must rely on does not answer whether Merle was a relative of the testator, Clede Ballew. The anti-lapse statute clearly requires the legatees' ancestor to be a blood relative of the testator. The petition by the respondent and answer by the appellants never addressed the relationship of Merle to the testator. The briefs here implied Merle was a relative of the testator. But, without proof of this prong of the statute's element, and without any presumption one way or another, *Spurr v. Spurr*, 285 Mo. 163, 226 S.W. 35, 40 (1920), there would be no issue of the statute ever taking effect, and the devise to Merle would fail as per the common law. However, counsel for the respondent, in answer to a question in oral argument admitted Merle Ballew was related to Clede Ballew. To enable a disposition of this case, the court deems this candid answer is a judicial admission, that is, an "act done during a judicial proceeding" which waives production of and is a substitute for the evidence to satisfy the statute. *Mitchell Eng'g, Div. of Ceco v. Summit Realty Co., Inc.*, 647 S.W.2d 130, 141 (Mo.App.1982); *Wild v. Consol. Aluminum Corp.*, 752 S.W.2d 335, 338 (Mo.App.1988).

Needless to say, the court is not overly pleased with pronouncing proof of the sat-

---

1. Under § 474.465.2, RSMo. 1986 it states:
    2. Except as provided in section 474.460, if the residue is devised to two or more persons and the share of one of the residuary devisees fails for any reason, his share passes to the other residuary devisee, or to other residuary devisees in proportion to their interest in the residue. (L.1980, S.B. No. 637, p. 484, § 1, eff. Jan. 1, 1981).

isfaction of the statute by such means. This court advises counsel against this method of proof, even in a lawsuit where the facts are not in dispute. The better practice is to submit a full and complete stipulation as to all facts necessary to make legal conclusions.

■■■ Several declarations of Missouri law and will construction should be stated:
1) the intention of the testator is the guiding principle. *Coleman v. Haworth,* 320 Mo. 852, 8 S.W.2d 931 (1928). § 474.430, RSMo.1986.
2) that intention is to be drawn from the four corners of the will. *Snow v. Ferril,* 320 Mo. 543, 8 S.W.2d 1008, 1012 (1928); *Cavers v. Union Trust Company,* 531 S.W.2d 526, 534 (Mo.App.1975).
3) an ambiguity will not be formed where none is existent. *Gregory v. Borders,* 345 Mo. 699, 136 S.W.2d 306, 307 (1939).
4) parol evidence will not be introduced where there is no ambiguity. *Murphy v. Enright,* 264 S.W. 811, 812–13 (Mo.1924).
5) blood relatives are favorites of the law and given first consideration where intent is doubtful. *Coleman v. Haworth, supra* 8 S.W.2d at 933.
6) a person is presumed to know the law when making a will. *Lounden v. Bollam,* 302 Mo. 490, 258 S.W. 440, 441 (1924); *Easter v. Ochs,* 837 S.W.2d 516, 518 (Mo.1992).

Most states have statutes similar to § 474.460 RSMo., *E.g., Jensen v. Nelson,* 236 Iowa 569, 19 N.W.2d 596, 600 (1945), and § 474.465, *E.g., Mrocko v. Wright,* 172 W.Va. 616, 309 S.E.2d 115, 118 (1983). The former statute prevents partial intestacy by preventing lapse of a legacy and giving the legacy to a relative. The latter statute prevents a residuary lapse and intestacy by passing that portion proportionately to the remaining legatees.

■■■ Anti-lapse statutes. nationwide prevent the harshness of the common law rules on deaths of legatees prior to the testator. The great majority of courts allow a testator to counteract the statute by use of language in the will that takes into account the prior death of a legatee. Testators are presumed to know the statute which provides for the anti-lapse of a legacy to a predeceased legatee. Courts resolve any doubt in favor of operation of the statute. Such words as "if my sister does not survive me," or "provided this person is living at my death" are held to be sufficient to impose a condition upon the vesting of the legacy. *In re Barrett's Estate,* 159 Fla. 901, 33 So.2d 159 (1948); *In re Estate of Allmond,* 10 Wash.App. 869, 520 P.2d 1388, 1390 (1974); *Nicholson v. Fritz,* 252 Iowa 892, 109 N.W.2d 226, 229 (1961); *Shalkhauser v. Beach,* 14 Ohio Misc. 1, 233 N.E.2d 527, 530 (Prob.Ct.1968). *See also:* 92 A.L.R. 857.

■■■ Several states having anti-lapse statutes use codified language to the effect the statute takes effect "unless a different disposition is made or required by the will." *Detzel v. Nieberding,* 7 Ohio Misc. 262, 219 N.E.2d 327, 332 (Prob.Ct.1966); *In re Phelps' Estate,* 147 Iowa 323, 126 N.W. 328, 329 (1910); 63 A.L.R.2d 948 (1959). Although Missouri's statute does not contain the above-quoted language, this does not lessen or dilute the cited cases from those states or the result here reached. Even without this statutory language, it is held the testator is not bound by the anti-lapse statute if the testator's clear intent in the will makes any legacy personal. *In re Phelps' Estate, supra.* Without providing a substitute legatee in case of the predecease of a legacy to the relative, Missouri testators can let the anti-lapse statute "take its course." *In re Murphy's Estate,* 9 Cal.App.2d 712, 50 P.2d 828, 829 (1935).

Most courts in most states, no matter the wording of the anti-lapse statutory language, require plain and clear language to counter-act the statute. *In re Parker's Estate,* 15 Misc.2d 162, 181 N.Y.S.2d 711, 713 (Surr.Ct.1958); *In re Estate of Leuer,* 84 Misc.2d 1087, 378 N.Y.S.2d 612, 614 (Surr.Ct.1976); *Powell v. Watkins,* 221 Ga. 851, 148 S.E.2d 303, 304 (1966); *Brewer v. Curtis,* 30 Del. 503, 108 A. 673, 674 (1920); *Henney v. Ertl,* 7 N.J.Super. 401, 71 A.2d 546, 548 (1950); *Detzel v. Nieberding,* 219 N.E.2d at 331. *See also* 63 A.L.R.2d 1172.

Analogous to the parole evidence rule, this court holds if the words of the testator's will, as here amended by the codicil, do not point to a doubtful or uncertain intention of the testator to override the statute or lead to such a construction, then there can be no shown intent to override the statute. Therefore, the matter is settled and not open for "evidence of surrounding circumstances" to show contrary intent. *Fischer v. Mills*, 85 N.W.2d at 537. When a litigant proposes there is a "contrary intention shown," that litigant bears the burden of showing an ambiguity in the will and then that the will overrides application of the statute. *Id.; In re Estate of Warner*, 249 Iowa 339, 86 N.W.2d 881, 883 (1957).

The closest Missouri case to the issues here on appeal is *Heisserer v. Loos*, 698 S.W.2d 6 (Mo.App.1985). The Eastern District stated a court must give effect to all provisions of a will, if possible. *Id.* at 8. The case reiterated the presumption a testator makes a will to avoid even a partial intestacy so the record must contain evidence to rebut this presumption. *Id.* Most important, however, was the way the court handled the residuary legacy to the deceased parent who left three children who also were named to a specific fraction of the residuum. The executrix sought a will construction to the effect the share of the predeceased person should lapse or else the residuary estate should go by descent. *Id.* at 7. The Eastern District upheld the trial court's decision that the anti-lapse statute applies "whether the beneficiary died before or after the execution of the will". *Id.* With the presumption the testator is presumed to know the consequences of § 474.-460 RSMo., and if the deceased beneficiary leaves lineal descendants, there is no lapse. *Id.*

The logic of *Heisserer* applies where there is no evidence in the will overcoming application of the anti-lapse statute. In this case, the will and codicil contain no language to overcome the operation of the statute, nevertheless the circuit court did not let the appellants take their ancestor's share. The respondents were successful in getting the court to limit the descendants with specific legacies to only those specific shares in the will. In this case, the will and codicil reveal no intention to override the anti-lapse statute. Consequently, the appellants should have received their 1/28 share each in addition to sharing proportionately the 1/7 share of their ancestor, Merle Ballew.

The next issue concerns whether the appellants share proportionately in the lapsed portions of the residuary estate of Theo Powell and Marvin Watts. Section 474.460 RSMo. does not prevent a lapse of the legacy to Theo (no lineal descendants) or to Marvin (not a child, grandchild or blood relative of the testator). Section 474.465 RSMo., which relates to a failure in the legacy to one of the residuary legatees and that share passing to the other residuary persons, was effective January 1, 1991, but was part of the common law of this state for many years prior to the enactment. Under this law and the will in question, the appellants should share in the swelled residuary.

In sum, the law presumes the testator knows the law. That being so, Clede left 1/28 of the residue to the relatives of the deceased relative, Merle Ballew. The plain import then is the relatives get the specific legacy and the unequivocal legacy of their deceased ancestor (instead of sharing the ancestor's portion with the other residuary legatees). Further, nothing in the will, or the law prevents them under § 474.465 RSMo. from sharing in the truly lapsed legacies.

Under the analysis adopted here, the appellants divide the 1/7th share of Merle, they take their 1/28th share, and all the residuary legatees, including Wendell Watts proportionally divide the lapsed residuary shares of Marion Watts and Theo Powell. This contrasts with the trial court's judgment which lapsed Merle's portion and did not allow the appellants' residuary share to swell. As applied to the real estate to be apportioned in Count II, which was owned outright by the testator, the net changes in the shares are shown in the columns below

with the judgment appealed from on the left:

| | Judgment Rendered | Judgment to be entered on remand |
|---|---|---|
| Plaintiff–Respondent Burford Royston | 28.571% | 20.00% |
| Wendell Watts | 3.572% | 5.00% |
| Richard Royston | 28.571% | 20.00% |
| Quinley Estate | 28.571% | 20.00% |
| Defendant–Appellant Sara Overstreet | 3.572% | 11.667% |
| Defendant–Appellant Merlee Bateman | 3.572% | 11.667% |
| Defendant–Appellant J.W. Ballew | 3.571% | 11.666% |

Count I of the suit, and the corresponding portion of the judgment appealed from divides the ¼ interest of the testator, Clede Ballew, in another parcel (known as "Top Watts"). The Count I parcel has other fractional owners, and therefore a different partition scheme which will not be set out in this opinion, but the distribution scheme here adopted will apply to the Count I ownership.

The judgment is reversed as to the determination of the share interests of the parties and the cause remanded to enter a judgment partitioning the proceeds of the sale under Count II as follows: Burford Royston 20.00%; Richard Royston 20.00%; Wendell Watts 5.0%; Quinley Estate 20.00%; Sara Overstreet 11.667%; J.W. Ballew 11.666%; Merlee Bateman 11.667%. The trial court shall enter judgment on Count I based on these proportional interests as applied to the interests involved in the partial-ownership interests of the real estate to be sold in Count I. *Snow v. Ferril,* 8 S.W.2d at 1017.

All concur.

APPENDIX